STATE of Missouri, Respondent,

v.

Ronald Udell WEST, Appellant.

No. 57012.

Supreme Court of Missouri,
Division No. 2.

Sept. 11, 1972.

John C. Danforth, Atty. Gen., Richard S. Paden, Asst. Atty. Gen., Jefferson City, for respondent.

Jack N. Bohm, Kansas City, for appellant.

HOUSER, Commissioner.

Ronald Udell West, convicted by a jury of stealing $65 and a billfold from the per-

son, acting with another with common intent, and sentenced to 3 years' imprisonment, has appealed.[1]

## I. Questions of Identification.

Taking exception to the method in which the lineup in this case was conducted, accused filed a motion to suppress the identification resulting therefrom. The motion was overruled. At the trial the victim was permitted to make an in-court identification of appellant as one of the thieves. Error is assigned in the action of the court in overruling the motion to suppress and permitting the in-court identification, first, because the lineup was conducted without affording appellant the benefit of counsel; second, because appellant's name as one of his assailants had been given to the victim by a witness prior to the lineup, and at the lineup the participants were required to step forward one by one and disclose their names; "and the other circumstances were so unduly prejudicial and conducive to irreparable harm of misidentification as to fatally taint the identification."

The lineup was conducted on May 13, 1970; the information was filed June 29, 1970. The lineup having been conducted prior to the filing of the information the per se exclusionary rule of United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149, and Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L. Ed.2d 1178, has no application. Kirby v. Illinois, 406 U.S. 682, 92 S.Ct. 1877, 32 L. Ed.2d 411 (United States Supreme Court, June 7, 1972); State v. Chavez, Mo.Sup., 483 S.W.2d 68 (July 10, 1972).

The forcing of appellant to step forward and give his name at the lineup in the presence of the victim, who had previously been supplied with West's name by one who identified West as one of the men seen fleeing from the scene, was irregular and improper but the admission of the in-court identification testimony is approved for the reason that there was sufficient ev-

---

1. Notice of appeal filed before January 1, 1972.

idence that this testimony was of independent origin. According to John Ebel, delivery man for a dairy in Kansas City, he was approached at 38th and Forest by a negro male (later identified by Ebel as Ronald Udell West) who purchased a quart of chocolate milk from him. About an hour later West and another male approached Ebel at 4330 Highland, in front of a Mrs. Robertson's house, and West said, "I see you every place, don't I?," to which Ebel answered, "You sure do because I deliver to different homes in this territory." West said, "My buddy wants to buy a quart of chocolate milk." Ebel turned around to open the doors of the refrigerator truck to get the milk, and as he did so he felt a quick jerk on his trousers. He grabbed back and discovered that his billfold was gone. He looked and saw the two men running across the street between the houses. Mrs. Robertson, who had been sitting on her porch when Ebel drove up, saw the two men running away from the milk truck. She recognized them as Ronald Udell West and Ronnie White, both of whom she knew personally. West had been in her home with White on a previous occasion. White was the father of a child born to Mrs. Robertson's unmarried daughter. Mrs. Robertson bore ill feelings against White. Mrs. Robertson gave Ebel the names of West and White as the two she had seen running from the scene. Two weeks later Ebel was called to the police department to identify people in a lineup. Ebel knew ahead of time that one of the men who was supposed to have taken his billfold was named West. The police advised Ebel that West would be in the lineup. The lineup consisted of West and two other black men of similar "slim" build, two of whom were slightly lighter but similar in color and about 2 inches shorter than West. Each of the three men, including West, stepped forward and gave his real name.

On the day of the theft Ebel saw West twice within an hour. Concerning his op-portunity to observe West at the scene of the theft he testified that the time exposure was less than five minutes, but nothing less than three minutes; that following the conversation, the lapse between the time he turned his back to the two men and the time they "came up" was "Just long enough for [him] to turn around and open [his] doors and reach in the truck."

Ebel testified that when he went into this lineup he could have identified West whether his name was stated or not; that as the three black men came out on the stage he was able to determine that appellant was one of the men who stole his billfold, "long before" West gave his name; that he identified West in his own mind before West's name was mentioned. Ebel made an in-court identification, which he testified was not "in any way affected by the fact that [he] identified [West] at a previous lineup"; that his in-court identification of West was "totally independent of the lineup identification." Ebel further testified that he identified West at the preliminary hearing, unaffected by his previous identification at the lineup.

While there was an infirmity in the lineup procedure we cannot on this record conclude that it fatally tainted the identification, nor do we find as a matter of law that the lineup procedure was unnecessarily suggestive and conducive to irreparable mistaken identification. Instead, in the totality of the circumstances, we conclude that there was an independent basis for the in-court identification and that the court did not err in overruling the motion to suppress and admitting in evidence the in-court identification.

## II. Question of Speedy Trial

█ Complaining that he had been deprived of his right to a speedy trial under the Sixth Amendment and §§ 545.890 and 545.900,[2] accused filed a motion to dismiss

2. All section references are to RSMo 1969, V.A.M.S.

the charges. The motion was overruled and appellant urges that the court erred in its ruling.

Under § 545.890 any person informed against and committed to prison must be brought to trial before the end of the second term after information filed, or else he is entitled to be discharged, unless the delay happens on application of the prisoner or is occasioned by want of time to try the case at such second term.

Under § 545.900 any person informed against and held to answer on bail must be brought to trial before the end of the third term after information filed, or else he is entitled to be discharged, unless the delay happens on his application or is occasioned by want of time to try the case at such third term.

Under § 545.920, which applies to cities or counties in which there are more than two regular terms of court having jurisdiction of criminal cases (this includes Jackson County, which has regular terms of such court commencing on the second Mondays of January, March, May, September and November. § 478.247), a defendant is not entitled to discharge under § 545.890 until the end of the third term after information filed, and is not entitled to discharge under § 545.900 until the end of the fourth term after information filed.

These sections have recently been interpreted not to entitle an accused awaiting trial to be released simply because the required number of terms have elapsed but to require in addition to that a showing that he has demanded a trial and that his request was made unsuccessfully for a reasonable length of time before his right to release has been asserted. State v. Harper, Mo.Sup. en Banc, 473 S.W.2d 419.

The information was filed on June 29, 1970 (during the May term). Accused was released on bond July 13, 1970. The case was initially set for trial in July, 1970 and again in August, 1970, but was not reached for trial because of the volume of cases on the docket. The case was set for trial in September, 1970 and December, 1970, and at each of those times the State announced ready for trial. On December 8, 1970 accused's counsel informed the court that he had made numerous unsuccessful attempts to locate accused, and at counsel's request a bond forfeiture capias was issued for accused on January 7, 1971 (at a time, strange as it may seem, when it appears that accused was an inmate of the Jackson County jail, upstairs in the same building, having been reincarcerated on December 19, 1970). In February or March, 1970 there were two continuances by agreement of counsel, apparently due to the fact that a more serious charge had been filed against West and the State desired to try that case first. The case went to trial on May 5, 1971. At the hearing of the motion to dismiss accused testified that he had been in jail continuously from December 19, 1970, awaiting trial, and that from the time of his arraignment in May, 1970 until trial date, May 5, 1971, he had never been notified of any other trial setting, even though he had been incarcerated a great portion of that time. One of his attorneys testified that to his recollection accused had never requested a continuance and that there was nothing in his file indicating that a continuance was requested by the defendant.

We need not comb through the facts to determine whether the number of terms required by statute elapsed, and whether the failure of the case to be tried at each such term was due to accused or the State applying for the delay or whether the delay was caused by want of time to try the case, for the reason that there is nothing in the record to indicate that the accused or his counsel at any time made any demand for a trial, or that he made such request "without success for a reasonable length of time before his right to release has been asserted," as required by the Court en Banc in the Harper case. Under

the reasoning of the majority of the Court in that case accused, having "[sat]idly by without objecting to the delay or requesting a trial," may not successfully assert his statutory right to release and go "scot free," because it was the intention of the legislature to provide a means of insuring every defendant a speedy trial only "if he wants such a trial." Neither West nor his counsel at any time before the filing of the motion to dismiss asserted any demand or desire for a speedy trial.

### III. Amendment of Information.

■ The information as originally filed charged that West "did then and there unlawfully, * * * steal from the person of one John V. Ebel, * * *." After the jury was sworn and over objection that it constituted a substantial deviation from the original charge the State was permitted to amend the information to charge that West "acting alone or in concert with others * * * did then and there unlawfully, * * * steal from the person of one John V. Ebel, * * *." Appellant contends that this was "extremely prejudicial"; that the amendment in essence charged West as an accessory in the commission of the crime; that he was not prepared to defend against a charge that someone else stole the billfold and money; that he was prepared only to defend against a charge that West personally took the billfold and money; that the amendment was a surprise to him and that he was thereby substantially prejudiced under Criminal Rule 24.02, V.A.M.R., which reads: "The court may permit an information to be amended * * * at any time before verdict * * * if no additional or different offense is charged and if substantial rights of the defendant are not prejudiced."

The court did not err in allowing the amendment. No additional or different offense was charged. All elements of stealing from the person were charged in both original and amended information. West was charged as a principal in the first degree in the original information. After the amendment he continued to be charged as a principal in the first degree. If the amendment had charged him merely as an accessory he would still have been liable as a principal, because of § 556.170,[3] which virtually abrogates all distinction between principals and accessories, State v. Butler, Mo.Sup., 310 S.W.2d 952, and eliminates all distinctions between principals in the first and second degree and aiding and abetting. Under § 556.170 all persons who participate in a crime may be charged, tried, convicted and punished alike. State v. Cline, Mo.Sup., 452 S.W.2d 190. There is no showing of any factual grounds of prejudice. Simply stating that accused was surprised and prejudiced is insufficient. State v. Aston, Mo.Sup., 412 S.W.2d 175 [10–12]. There is nothing to indicate that the amendment precluded West from asserting any defense to the original charge which he may have had. No substantial rights of West are shown to have been prejudiced by the amendment, which was properly allowed in the discretion of the court.

Judgment affirmed.

STOCKARD, C., concurs.

PER CURIAM:

The foregoing opinion by HOUSER, C., is adopted as the opinion of the Court.

All of the Judges concur.

3. "556.170. Accessories defined.—Every person who shall be a principal in the second degree in the commission of any felony, or who shall be an accessory to any murder or other felony before the fact, shall, upon conviction, be adjudged guilty of the offense in the same degree, and may be charged, tried, convicted and punished in the same manner, as the principal in the first degree."