STATE of Missouri,
Plaintiff-Respondent,

v.

John ASKEW, Jr., Defendant-Appellant.

No. KCD 29114.

Missouri Court of Appeals,
Kansas City District.

Aug. 28, 1978.

Clifford A. Cohen, Public Defender, Kansas City, for defendant-appellant.

John D. Ashcroft, Atty. Gen., John M. Morris, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

Before SOMERVILLE, P. J., and DIXON and TURNAGE, JJ.

DIXON, Judge.

Defendant appeals a conviction and jury-imposed sentences totaling 45 years for the crimes of robbery and sodomy. There were six counts. Two counts charged separate acts of sodomy per os and per anus on one boy and two counts charged the same offenses as to another boy. The robbery counts charged a forcible taking of property from each of the victims. There were convictions on three counts of sodomy and one count of robbery; two counts resulted in acquittals. The trial court directed that the sentences imposed by the jury for two acts of sodomy as to one boy be concurrent and the twenty-year sentence imposed by the jury for a single sodomy on the other youth be served consecutively. The finding of guilty on one count of robbery was made consecutive to the other sentences imposed.

Defendant raises a single issue asserting error in the admission of the victim's written statement given to the police when the crime was reported.

The sufficiency of the evidence is not questioned.

J. C., age 13, and his friend, S. B., walked to a shopping area where S. B. spent forty cents of a dollar in his possession. About 7 p. m., the boys started home, taking a path along a creek bed. J. C. noticed that they were being followed by a black male. As the boys started up from the creek bed, the black male that J. C. had noticed earlier grabbed both boys, told them to empty their pockets, and took their knives and a hatchet they had found.

The black male, later identified as John Askew, tied each of the boys up, forced them to commit oral sodomy and to submit to anal intercourse. After kicking and beating both boys and after taking sixty cents from S. B., the man left; the boys returned home, and the police were called.

On the basis of a detailed physical description of the assailant and the bicycle he was riding furnished to the police, John Askew was arrested the following day on a bridge overlooking the creek. J. C. identified the defendant as his attacker in a four-man line-up at the police station. S. B. could not be contacted after the evening of the attack, and it was established later that he had moved to Arkansas, leaving no forwarding address.

After the line-up Askew signed a written confession to the crimes. Detectives testified that Askew's confession was freely and voluntarily given after a waiver of his rights, and it was before the jury.

On the single issue raised as to the propriety of the use of the victim's written statement, the defendant argues on appeal that the statement was hearsay and improper rehabilitation of the victim's direct testimony. The objection made by defendant at the time the statement was offered is lacking in specificity. A fair reading of the colloquy between counsel and the court indicates that the statement was admitted on the theory that it was a prior consistent statement offered to rehabilitate the victim's testimony after cross-examination, to which the defendant objected.

The initial inquiry must address the record facts to determine if an inconsistency or contradiction of the victim's testimony appears from the testimony. The victim was examined closely about the details of the

attack, about the line-up procedure, and about the possibility of influence or "coaching" from the prosecutor. Although the cross-examination was thorough, it failed to shake J. C.'s account of the attack, nor his identification of the defendant. Nor did the questioning about conversations of the victim with the prosecutor give rise to any real inference of the prosecution having suggested testimony to the witness. The witness' responses on cross-examination admitted some refreshment of memory. The prosecutor then handed the witness the statement and asked the boy if that was the statement which the prosecutor had used in pretrial discussions refreshing his memory. It was then established that the statement was in the youth's own words. Thereafter, the statement was offered and received in evidence, and, ultimately, read to the jury.

The general rule concerning use of prior consistent statements permits a showing of the *fact* that the prior statement or complaint was made for corroboration; the *details* of the statement are not generally admissible. *State v. Fleming*, 354 Mo. 31, 188 S.W.2d 12 (1945). However, details may be admissible for rehabilitation.

". . . prior extrajudicial statements consistent with a witness' testimony at the trial are admissible in evidence in rebuttal to rehabilitate the credibility of the witness after testimony establishing extrajudicial statements by the witness contradicting the witness' testimony at the trial has been introduced for impeachment purposes." *State v. Fleming, supra* at 15.

The *Fleming* rule is further modified by *State v. Cox*, 542 S.W.2d 40 (Mo.App.1976), and *State v. McKinney*, 475 S.W.2d 51 (Mo. 1971). In *Cox* and *McKinney*, courts broadened the *Fleming* rule to include *any* inconsistencies that occur in testimony—not just inconsistencies that appear in a prior extrajudicial statement:

" 'On redirect examination a witness may properly be interrogated as to facts, circumstances, or any matter tending to refute, weaken, or remove inferences, impressions, implications, or suggestions which might result from testimony or inquiries on cross-examination, although the facts brought out may be prejudicial to the other party. * * * Where there is a real or apparent inconsistency in the testimony of a witness, he may be questioned on redirect examination to straighten out the inconsistency, and for this purpose he may be asked questions tending to refresh his memory, such as whether he made certain statements before the trial. * * *' *State v. McKinney*, 475 S.W.2d 51, 54 (Mo.1971)." *State v. Cox, supra* at 48–49.

Applying these principles to the instant case, there appears to be no justification for the reading of the statement to the jury. Such use of the witness' prior statement was erroneous where no contradiction or unfavorable inference arose from the cross-examination. The prosecutor, by proving that the pretrial refreshment of the witness was from the witness' own statement went as far as *Cox, supra*, and *McKinney, supra*, would authorize, and the subsequent reading to the jury of the entire statement was improper.

Even though the use of the statement constituted error, its prejudicial effect, if any, must be determined. Harmless error does not require a reversal. The standards for determining harmless error are clear in Missouri. *State v. Degraffenreid*, 477 S.W.2d 57 (Mo. banc 1972):

"Harmless error is not grounds for reversal; however, error in the admission of evidence should not be declared harmless unless it is so without question. (citations omitted)." *State v. Degraffenreid, supra* at 64.

The *Degraffenreid* opinion also cites with approval the standard of error stated in *Thomas v. United States*, 281 F.2d 132, 136 (8 Cir. 1960). "We are also mindful that error which in a close case might call for a reversal may be disregarded as harmless when the evidence of guilt is strong." *State v. Degraffenreid, supra* at 65.

Applying these standards to the present case, the error is harmless. There is a strong evidence of guilt in the case; Askew

signed a voluntary confession of guilt; J. C. was positive in his recollection of the attack and in his identification of Askew as his assailant. The erroneously admitted statement could only be considered cumulative to the testimony and evidence properly admitted.

Some care must be used in dismissing cumulative evidence as harmless for, as the concurring opinion in *Degraffenreid* points out:

".   .   . the fact that evidence is cumulative does not automatically make its admission harmless. I agree with that viewpoint. Actually, each case must be examined to determine whether the particular cumulative evidence admitted therein was harmless and hence not prejudicial, even though erroneous." *State v. Degraffenreid, supra* at 66.

Even observing that cautionary note, it is clear that the evidence in question is both cumulative *and* harmless. The strong evidence of guilt supports the verdict, and the statement of the victim supplied no additional force or strength to the case against the defendant.

The judgment and conviction are affirmed.

All concur.