STATE of Missouri, Respondent,

v.

Robert Lee HAGGARD, Appellant.

No. 62227.

Supreme Court of Missouri,
En Banc.

July 14, 1981.

Rehearing Denied July 29, 1981.

Robert M. Liston, Sedalia, for appellant.

John Ashcroft, Atty. Gen., Jefferson City, Philip M. Koppe, Asst. Atty. Gen., Kansas City, for respondent.

Thea S. Sherry, Asst. Public Defender, Clayton, Gary L. Gardner, Asst. Public Defender, Kansas City, Amicus.

WELBORN, Commissioner.

Robert Haggard was convicted of robbery, first degree, §§ 560.120, RSMo 1969, and 560.135, RSMo 1975 Supp., and armed criminal action, § 559.225, RSMo 1976 Supp. The jury assessed punishment at 15 years on the robbery count and 18 years on the armed criminal action count. Judgment and sentence were entered accordingly, the sentences to run concurrently.

Appellant raises seven points of error: (1) refusal of requested continuance; (2) permitting the State to amend the information on the day of trial; (3) permitting the State to endorse a witness on the day of trial; (4) conviction for both robbery first degree and armed criminal action violated protection against double jeopardy; (5) prosecutor commented on defendant's failure to testify; (6) the giving of Instruction No. 7, MAI–CR 2.70; and (7) allowing a witness's previous consistent statement to be read for rehabilitation. Affirmed as to the robbery count and reversed as to the armed criminal action count.

The sufficiency of the evidence is not questioned. The jury could reasonably

have found that, in March, 1978, Haggard, in the company of Kenneth Smith, Wilbur Barnett and Mark Goodman, drove a truck to a point about a quarter of a mile from Casey's General Store in Sedalia. Haggard left the truck with a rifle and a stocking cap and walked toward the store. A short time later Haggard ran back to the truck with the gun and a paper sack containing money.

Goodman and Barnett testified that they were with Haggard during the evening. They testified that appellant obtained the rifle and they were with him when a part of the barrel and a part of the butt were sawed off. They stated that, after appellant returned to the truck with the sack of money, he divided the money with Smith and Barnett, but Goodman refused a share.

The cashier at Casey's testified that, a little after 10:00 P.M., a man entered the store. He pulled a stocking cap over his face so she was unable to observe his full facial features. The man had a gun which she identified as similar to the one taken from Haggard's truck after his arrest. At the man's order she placed the money from the cash register in a paper sack which the man took and left. She testified that Haggard matched the stature of the man who had committed the robbery and the part of the face which she could see before he pulled his stocking cap down matched that part of Haggard's face. A short time later, officers stopped Haggard's vehicle and discovered the sawed-off rifle in it. Some $132 was recovered from Haggard and two of his companions.

Appellant contends the court erred in denying his application for a continuance. The case was removed from Pettis County to Cooper County on a change of venue. One continuance was granted to the defendant and the case was set for trial on June 12, 1978. Friday before the trial was set on Monday, Haggard's counsel requested a continuance, stating that he had taken the depositions of three witnesses, including Barnett and Goodman, on May 31, and had received the typed copy on that day. He stated he would not have time to read the

depositions to prepare for cross-examination and possible impeachment by Monday. Two of the depositions were 25 pages in length and one about seven pages. Counsel who argued for the continuance and who was to try the case had taken the depositions.

■ Appellant agrees an application for a continuance is addressed to the sound discretion of the trial court and that he has the burden to demonstrate that the denial of a continuance was prejudicial to his case. *State v. Lane,* 551 S.W.2d 900, 906[13–16] (Mo.App.1977). Here, appellant does not demonstrate any such prejudice. He merely speculates that, if counsel had had additional time to read the depositions, he might have been able to discover information which could be used as impeachment against one of the witnesses. Since the same counsel had taken the depositions about ten days prior to his appearance to request a continuance, he knew what the witnesses had said and could have conducted any investigation he desired during that time. Rather, counsel simply said he would not have time to read three very short depositions between Friday and Monday. No prejudice has been shown and no abuse of discretion has been demonstrated.

Appellant also complains of the court's denial of his oral request for continuance, made on the day of trial. At that time, defense counsel stated that a reading of Goodman's deposition over the weekend before the trial date had recalled to counsel the deponent's testimony regarding his having spent one year at the Warren E. Hearnes Correctional Center. According to counsel, the deponent's testimony gave some hint of treatment for a mental disorder, although the witness denied that he had been treated for mental disease. Counsel stated that he wanted to check the records of the witness's stay at the institution in order to determine whether or not it might provide a basis for impeachment of the witness. He had been unable to obtain the records over the weekend.

■ The trial court's refusal of a continuance on this basis was not an abuse of its

discretion to which, appellant acknowledges, the request was directed. Trial counsel had heard the deposition testimony and, knowing the approaching trial date, could have pursued the inquiry before receipt of the transcript of the deposition. No showing was made that the ruling deprived defendant of evidence which might have been of value. Counsel had adequate opportunity to prepare on this issue and his assertion that the court's ruling denied defendant assistance of counsel is without merit.

■ Appellant contends the court erred in permitting the State to amend the information on the day of trial to delete the words "did knowingly act together and with a common purpose of committing the acts hereinafter set out with two other individuals, and * * *." The effect of the amendment was to charge defendant with the commission of the crimes while acting alone instead of charging that he committed them while acting with others. In *State v. West*, 484 S.W.2d 191, 195[4, 5] (Mo.1972), the court held there was no abuse of discretion in allowing an amendment to the information during the trial to charge that the defendant acted with others. The court held the distinction between principals and accessories has been virtually eliminated and all persons who participate in a crime may be charged, tried, convicted and punished alike. The amendment here was to delete the allegation that Haggard acted with others, but the reasoning of *West* applies. No additional or different offense was charged and all the elements of robbery first degree were stated in both the original and the amended information. The court did not err in allowing the amendment.

■ No error may be predicated upon the court's allowing the State to endorse a witness on the day of trial. The prosecutor had previously informed defense counsel of his intention to call the witness, a police officer, and defendant's counsel had taken the officer's deposition. When the State requested permission to endorse the witness, defendant's counsel replied: "I see no objection to indorsing the witness." Such waiver and the prior knowledge of defense counsel regarding the witness precludes any finding of error in the trial court's exercise of discretion.

■ Appellant contends the prosecuting attorney in his opening statement impermissibly commented that the defendant might not produce any evidence. During his opening statement the prosecutor said: "After all the evidence has been heard, and I assume there will be eight to ten witnesses called by the State, I do not know how many called by the defendant, if any." Appellant argues that by this statement the prosecutor was calling the attention of the jury to the defendant's right not to testify and by this means hoped to obtain a favorable inference that the failure to testify would indicate guilt.

The prosecutor in no manner commented upon the failure of the defendant to testify, there having been no opportunity for him to do so. The statement was simply that the State had eight to ten witnesses to call and the prosecutor did not know how many, if any, witnesses the defendant might call. This was not a comment on the defendant's right not to testify. See *State v. Terry*, 472 S.W.2d 426, 430[6] (Mo. banc 1971), vacated in part 408 U.S. 940, 92 S.Ct. 2876, 33 L.Ed.2d 763 (1972).

Appellant contends the court erred in giving Instruction No. 7, MAI–CR 2.70. This instruction told the jury that the defendant was charged with a separate offense in each count submitted and that each offense and the evidence and law applicable to it should be considered separately. Appellant contends because of the inter-relationship between the charge of robbery first degree and the charge of armed criminal action this instruction was confusing.

■ Separate instructions were given to the jury concerning the robbery and armed criminal action charges. Instruction No. 7 was required by MAI–CR in that situation. Rule 20.02(a). Instruction No. 7 read with other instructions correctly informed the jury as to the necessary elements of each

offense. Appellant complains that No. 7 was confusing because it would have been impossible for the jury to isolate the evidence applicable to each charge. That is not what the instruction required. It required only that, as to each of the substantive charges, the jury find the facts required under the instruction as to each offense. The complaint against Instruction No. 7 is without merit. *State v. Tilley*, 569 S.W.2d 346, 348–349[4–6][7] (Mo.App.1978); *Simms v. State*, 568 S.W.2d 801, 804–805[4]–[7–8] (Mo.App.1978).

■ Appellant contends the court erred in allowing the State to read a statement Mark Goodman had given to police officers. On cross-examination Goodman was asked if he had ever told anyone that he did not know who robbed the store. Goodman denied ever making such a statement. By use of his deposition, counsel brought out that Goodman had said that he told a police officer that he did not know who had robbed the store. The police officer who took Goodman's statement was called as a witness and was allowed, over defendant's objection, to read the entire statement given by Goodman. There is no question the statement was given prior to the deposition testimony and there is no question that Goodman was impeached by use of his deposition. Appellant relies upon *State v. Fleming*, 354 Mo. 31, 188 S.W.2d 12 (1945). In *Fleming* the court held that a prior consistent statement could be used only to the extent necessary to counter the subject on which the witness had been impeached. The court held that matters foreign to the subject on which the witness had been impeached were incompetent and inadmissible. See also *State v. Askew*, 570 S.W.2d 798 (Mo.App.1978). Here, the statement given by Goodman and read to the jury covered the activities of the entire evening and was not confined to the subject matter on which he had been impeached. Therefore, the court should have confined the reading of the statement to only that portion covering the subject matter on which Goodman had been impeached.

However, even if the reading of the entire statement for purposes of rehabilitation was error, there remains the question of its prejudicial effect, if any. In *State v. Degraffenreid*, 477 S.W.2d 57, 64[14] (Mo. banc 1972), the court stated: "[E]rror in the admission of evidence should not be declared harmless unless it is so without question." The court also stated: "We also are mindful that error which in a close case might call for a reversal may be disregarded as harmless when the evidence of guilt is strong."

Applying these standards, the error in reading the entire statement of Goodman was harmless. There is strong evidence of guilt in this case with the testimony of Goodman and Barnett coupled with the testimony of the cashier. Further, the statement of Goodman which was read was identical to his in-court testimony and thus was cumulative. Even observing the caution noted in *Degraffenreid*, with reference to cumulative evidence, the admission of the statement was both cumulative and harmless.

■ Under *Sours v. State*, 593 S.W.2d 208 (Mo. banc 1980); vacated *Missouri v. Sours*, 446 U.S. 962, 100 S.Ct. 2935, 64 L.Ed.2d 820 (1980); on remand *Sours v. State*, 603 S.W.2d 592 (Mo. banc 1980), the conviction for armed criminal action cannot stand.

The judgment of conviction on Count I for robbery in the first degree is affirmed. The judgment of conviction on Count II for armed criminal action is reversed.

*On Motion For Rehearing*

WELLIVER, Judge.

Motion for rehearing was granted solely upon the issue of whether or not conviction for armed criminal action, § 559.225, RSMo Supp.1976, and robbery in the first degree with a dangerous and deadly weapon, §§ 560.120, RSMo 1969, and 560.135, RSMo Supp.1975, arising out of the same transaction, violated the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution based upon reexamination of the case in light of *Albernaz v. United States*, 450 U.S. ——, 101 S.Ct. 1137, 67 L.Ed.2d 275 (1981).

On January 15, 1980, this Court in *Sours v. State*, 593 S.W.2d 208 (Mo.banc 1980) (hereafter *Sours I*) held that conviction under both of these statutes for acts arising out of the same transaction constituted double jeopardy under the United States Constitution. Double jeopardy under our own Constitution, Article I, Section 19, is limited to prosecution or conviction only after having been "once acquitted."

On May 27, 1980, the United States Supreme Court vacated *Sours I* and remanded the case for consideration in light of *Whalen v. United States*, 445 U.S. 684, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980). *Missouri v. Sours*, 446 U.S. 962, 100 S.Ct. 2935, 64 L.Ed.2d 820 (1980).

On August 18, 1980, this Court reconsidered *Sours I* in light of *Whalen* and issued its opinion in *State v. Sours*, 603 S.W.2d 592 (Mo.banc 1980) (hereafter *Sours II*), which opinion is attached as Appendix I to this opinion.[1]

On January 26, 1981, in *Missouri v. Sours*, —— U.S. ——, 101 S.Ct. 953, 67 L.Ed.2d 118 (1981) (*Sours II*), the United States Supreme Court denied the application of the State of Missouri for certiorari. The

Missouri courts of appeals continued to rule a number of cases based upon the authority of *Sours II*. After March 23, 1981, the United States Supreme Court granted certiorari on several of these courts of appeals cases and remanded them together with three by this Court "for further consideration in light of *Albernaz* . . . ."[2]

In view of the number of cases involved and for the purpose of avoiding the delays which would result in waiting for mandates, transfers of the cases to this Court, and docketing and hearing in this Court, we chose the instant case as the vehicle for accomplishing the reexamination "in light of *Albernaz*." We granted the motion for rehearing and limited briefs and arguments to "examination in light of *Albernaz*." The parties, public defenders and prosecutors were invited to participate in briefing and arguing the issue on May 27, 1981.

### Reexamination in Light of Albernaz

Having traversed the almost identical stormy course as that of our brothers in Delaware, we too perceive ourselves as sailing toward the "Sargasso Sea"[3] mentioned

---

1. *Sours II* is made an appendix to this opinion in the interest of brevity and for the convenience of the many who are involved in the several cases ruled contemporaneously herewith. The publishers are authorized to incorporate *Sours II* by reference to its earlier citation in their books.

2. *See State v. Counselman*, 603 S.W.2d 3 (Mo. App.1980); *State v. McGee*, 602 S.W.2d 709 (Mo.App.1980); *State v. Payne*, 607 S.W.2d 822 (Mo.App.1980); *State v. White*, 610 S.W.2d 646 (Mo.App.1980); *State v. (Johnny) Williams*, 610 S.W.2d 644 (Mo.App.1980), all of which were vacated and remanded to the Court of Appeals, Eastern District, in *Missouri v. Counselman*, —— U.S. ——, 101 S.Ct. 1690, 68 L.Ed.2d 190 (1981). *See Brown v. State*, 607 S.W.2d 801 (Mo.App.1980); *State v. Collins*, 607 S.W.2d 781 (Mo.App.1980); *State v. Hawkins*, 608 S.W.2d 496 (Mo.App.1980); *State v. (Eddie) Greer*, 609 S.W.2d 423 (Mo.App.1980); *State v. Martin*, 610 S.W.2d 18 (Mo.App.1980), all of which were vacated and remanded to the Court of Appeals, Western District, in *Missouri v. Brown*, —— U.S. ——, 101 S.Ct. 1735, 68 L.Ed.2d 222 (1981). *See State v. Sinclair*, 606 S.W.2d 271 (Mo.App.1980), vacated and remanded to the Court of Appeals, Southern District, in *Missouri v. Sinclair*, —— U.S. ——, 101

S.Ct. 3044, 69 L.Ed.2d 415 (1981). *See State v. Lowery*, 608 S.W.2d 445 (Mo.App.1980), vacated and remanded to the Court of Appeals, Eastern District, in *Missouri v. Lowery*, —— U.S. ——, 101 S.Ct. 3044, 69 L.Ed.2d 415 (1981). *See State v. (Timothy) Crews*, 607 S.W.2d 759 (Mo.App.1980); *State v. (Terry) Crews*, 607 S.W.2d 729 (Mo.App.1980); *State v. Helton*, 607 S.W.2d 772 (Mo.App.1980); *State v. Tunstall*, 607 S.W.2d 809 (Mo.App.1980), all of which were vacated and remanded to the Court of Appeals, Eastern District in *Missouri v. Crews*, —— U.S. ——, 101 S.Ct. 3103, 69 L.Ed.2d 968 (1981). In all of the above cases where an application for transfer to this Court was requested, all such applications were denied.

   *See State v. (Donald) Greer*, 605 S.W.2d 93 (Mo.1980); *State v. Kendrick*, 606 S.W.2d 643 (Mo.1980); and *State v. (Rollan Anthony) Williams*, 606 S.W.2d 777 (Mo.1980), all of which were vacated and remanded to this Court in *Missouri v. Greer*, —— U.S. ——, 101 S.Ct. 3000, 69 L.Ed.2d 385 (1981).

3. The Sargasso Sea is a large oval-shaped area of the North Atlantic Ocean set apart by the presence of marine plants, or seaweed, which float on its surface—a region of slow ocean

in *Albernaz* and described in *Hunter v. Delaware*, 430 A.2d 476 (Del.1981).

Our reading of *Albernaz* persuades us that the United States Supreme Court was dealing with two separate crimes each involving proof of an element different from and not included in the other. Our case and its predecessors, *Sours I* and *Sours II*, are distinguishable from *Albernaz* for the reason that having proved every fact and element necessary to prove robbery with a dangerous and deadly weapon, you have proved every element and every fact required for proof of armed criminal action. We are in complete agreement with the *Hunter* court that "The definitive ultimate and penultimate sentences of *Albernaz* are *dicta*, unnecessary to reach the Court's conclusion in that case; . . ." 430 A.2d at 480 (emphasis in original).

We are not without understanding of the frustration of the *Hunter* court when in seeming desperation they concluded:

> The cloud thus remaining over the law of double jeopardy notwithstanding, we must consider ourselves bound by the majority rule now apparently emerging out of the 'Sargasso Sea' and manifesting itself in the last paragraphs of *Albernaz*. Although *dicta*, the emergence of the evolving rule stands unmistakably clear by virtue of the vote of 6 to 3, cast in the face of the flat contradiction of the concurring Justices, including the author of *Whalen*.
>
> Applying the rule of *Albernaz* to the instant case, we now hold that where the General Assembly intended, as we have found that it did in § 613(1) and § 1447, to impose multiple punishments for two offenses not satisfying the *Blockburger [v. U. S.,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306] test, imposition of two consecutive sentences by a court as a result of a single criminal trial does not violate the Double Jeopardy Clause of the Fifth Amendment.
>
> The *Hunter* majority in this Court reluctantly follows the evolving rule of the majority of the United States Supreme Court in *Albernaz*. The Rule of Supremacy prevails on this issue, however, and trusting, as we must, that the *dicta* in *Albernaz* will soon become the clear and unquestioned rule of law to be followed, we now hold as follows in the instant case: Our conclusion 'that § 1447 creates an offense distinct from the underlying § 613(1) felony of Assault First Degree, and that it was the legislative intent to subject this defendant to multiple penalties for the single criminal act in which she engaged,' [*Hunter v. State*, Del.Super.] 420 A.2d [119] at 124, is determinative upon the issue of double jeopardy. It follows therefrom that the imposition of multiple sentences upon the defendant for the two offenses in this case does not violate the Double Jeopardy Clause of the Fifth Amendment.
>
> Any statement contrary to the above, contained in the previous *Hunter* opinions of this Court, is hereby abandoned.
>
> The judgment below now stands
> AFFIRMED.

430 A.2d at 481 (footnote omitted).

In *Sours I*, a case identical to this case, we followed what we perceived to be the teaching of *Illinois v. Vitale*, 447 U.S. 410, 100 S.Ct. 2260, 65 L.Ed.2d 228 (1980); *Simpson v. United States*, 435 U.S. 6, 98 S.Ct. 909, 55 L.Ed.2d 70 (1978); *Harris v. Oklahoma*, 433 U.S. 682, 97 S.Ct. 2912, 53 L.Ed.2d 1054 (1977); *Brown v. Ohio*, 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977); *Jeffers v. United States*, 432 U.S. 137, 97 S.Ct. 2207, 53 L.Ed.2d 168 (1977); *Iannelli v. United States*, 420 U.S. 770, 95 S.Ct. 1284, 43

---

currents surrounded by a boundary of rapidly moving currents such as the Gulf Stream and the North Equatorial Current. 'The early navigators who sailed their small ships to North America saw the Sargasso Sea as patches of gulfweed that seemed to form wide-spreading meadows. Soon there were legends and myths about the region which told of large islands of thickly matted seaweed inhabited by huge monsters of the deep. * * * They pictured a blanket of netted seaweed from which no ship could escape, once it became entangled in the weed. * *'

*Id.* at 480 n.2, *quoting, World Book* Encyclopedia, Vol. 17, p. 111 (1976).

L.Ed.2d 616 (1975); *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969); and *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), and held that conviction on both the offense of armed criminal action and the offense of robbery with a dangerous and deadly weapon constituted multiple punishment for the same offense arising out of a single transaction and was violative of the double jeopardy clause of the fifth amendment. When *Sours I* was vacated by the United States Supreme Court and we were directed to reexamine the case in light of *Whalen*, we concluded that the unique wording of the Missouri statutes and clear, positive and unequivocal intent of the legislature to authorize multiple punishments did not leave us the same option which the Court had in *Whalen* —that of finding that Congress intended not to twice punish thereby permitting the Court to reserve the constitutional question of double jeopardy. We concluded that we had no alternative other than to meet the double jeopardy issue. We concluded that we should affirm our prior holding that multiple punishment for the same offense was violative of the double jeopardy clause as we believed it to be construed by *Vitale, Simpson, Harris, Brown, Jeffers, Iannelli, Pearce* and *Blockburger.* On January 26, 1981, the United States Supreme Court entered its order denying the petition of the state for certiorari in *Sours II.* Following the same reasoning expressed by the *Hunter* court, a large majority of the United States Supreme Court tacitly, if not in fact, sustained our position as stated in *Sours II.* Only Justices Blackmun and Rehnquist noted that they "would dismiss the petition for a writ of certiorari as moot." —— U.S. at ——, 101 S.Ct. at 953, 67 L.Ed.2d at 118.

■ Under these circumstances we are again compelled to affirm our prior position, as expressed in *Sours II*, and hold that by enactment of these two statutes the Missouri legislature intended to twice punish the appellant, and that such multiple punishments for the same offense arising out of the same transaction violates the Fifth Amendment to the United States Constitution. Until such time as the Supreme Court of the United States declares clearly and unequivocally that the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution does not apply to the legislative branch of government, we cannot do other than what we perceive to be our duty to refuse to enforce multiple punishments for the same offense arising out of a single transaction.

The Division One opinion of Welborn, C., heretofore adopted by the Court en banc as its principal opinion, is upon this rehearing again adopted as the opinion of the Court en banc. Upon reexamination of the case in light of *Albernaz*, we conclude that the judgment of conviction on Count II for armed criminal action must be reversed as set forth in the principal opinion. The Division One opinion of Welborn, C., adopted by the Court en banc as its principal opinion and filed herein March 9, 1981, is now ordered published together with this opinion on rehearing.

Conviction on Count I, affirmed.

Conviction on Count II, reversed.

DONNELLY, C. J., and SEILER, MORGAN, HIGGINS and BARDGETT, JJ., concur.

RENDLEN, J., concurs in part and dissents in part in separate opinion filed.

RENDLEN, Judge, concurring in part and dissenting in part.

I join the majority in its affirmance of defendant's conviction (sentence 15 years) for robbery in the first degree on Count I. However, I cannot concur in the reversal of the armed criminal action conviction, under Count II (sentence 15 years) because that reversal stems from the majority's adamant refusal to follow the controlling law, most recently announced by the United States Supreme Court in *Albernaz v. United States*, 450 U.S. ——, 101 S.Ct. 1137, 67 L.Ed.2d 275 (1981). The case at bar is but another of those in which Missouri juries have, in single trials on separate counts convicted defendants of robberies (or other

statutory crimes), and on armed criminal action charges under § 559.225, RSMo Supp. 1976 (now § 571.015, RSMo 1978).

This court mistakenly holds the double jeopardy proscription of the Fifth Amendment to the United States Constitution requires reversal of the armed criminal action convictions in those cases. The majority launched this course in *Sours v. State*, 593 S.W.2d 208 (Mo.banc January 15, 1980) (*Sours I*), and anchored its position in *Sours v. State*, 603 S.W.2d 592 (Mo.

banc August 8, 1980) (*Sours II*). The three districts of our Court of Appeals have been confronted by a surprisingly large number of such cases, and bound by this court's "Sours" decision, have reversed the armed criminal action convictions. As noted in the margin below,[1] between March 23 and June 22 of this year, the United States Supreme Court vacated judgments of reversal in 16 such cases, and in each instance remanded the cause "for further consideration in light of *Albernaz v. United States*, 450 U.S. ——, 101 S.Ct. 1137, 67 L.Ed.2d 275 (1981)." In addition, the Court accept-

---

1. To the Court of Appeals, Eastern District, the United States Supreme Court, in *Missouri v. Counselman*, —— U.S. ——, 101 S.Ct. 1690, 68 L.Ed.2d 190 (1981), vacated and remanded "for further consideration in light of *Albernaz v. United States*, 450 U.S. ——, 101 S.Ct. 1137, 67 L.Ed.2d 275 (1981)," the following decisions rendered by that district: (1) *State v. White*, 610 S.W.2d 646 (Mo.App.1980), affirming conviction of first degree robbery, but reversing armed criminal action judgment; (2) *State v. Williams*, 610 S.W.2d 644 (Mo.App.1980), affirming judgments of assault with intent to rape with malice aforethought (together with carrying a concealed weapon), but reversing on armed criminal action; (3) *State v. Payne*, 607 S.W.2d 822 (Mo.App.1980), affirming on first degree robbery and reversing on armed criminal action; (4) *State v. Counselman*, 603 S.W.2d 3 (Mo.App.1980), again affirming the first degree robbery conviction and setting aside the armed criminal action conviction; and, (5) *State v. McGee*, 602 S.W.2d 709 (Mo. App.1980), reversing and remanding the conviction for assault with intent to do great bodily harm without malice, as well as vacating the armed criminal action conviction. These causes were transferred for disposition in this court on June 2, 1981. Additionally, (6) *State v. Lowery*, 608 S.W.2d 445 (Mo.App.1980), affirming the first degree robbery conviction but reversing on armed criminal action, was vacated and remanded by the United States Supreme Court to the Court of Appeals, Eastern District, with the above-quoted instruction. *Missouri v. Lowery*, —— U.S. ——, 101 S.Ct. 3044, 69 L.Ed.2d 415 (1981). On June 22, 1981, the cause was transferred to be determined here. The Court's latest pronouncement occurred in *Missouri v. Crews*, —— U.S. ——, 101 S.Ct. 3103, 69 L.Ed.2d 968 (1981), where the Court vacated and remanded to the Eastern District four additional cases with instructions to reexamine in the light of *Albernaz*: (7) *State v. Crews*, 607 S.W.2d 759 (Mo.App.1980), affirming robbery and kidnapping convictions and reversing on armed criminal action; (8) *State v. Crews*, 607 S.W.2d 729 (Mo.App.1980), again affirming first degree robbery and kidnapping

judgments, but reversing the armed criminal action conviction; (9) *State v. Helton*, 607 S.W.2d 772 (Mo.App.1980), affirming the first degree robbery conviction, yet reversing the armed criminal action judgment; and, (10) *State v. Tunstall*, 607 S.W.2d 809 (Mo.App. 1980), affirming the pronouncement of guilt of attempted first degree robbery, but reversing the armed criminal action conviction. These causes were transferred on July 9, 1981, for disposition in this court.

The Supreme Court, on certiorari, vacated and remanded to the Court of Appeals, Western District, five cases, "for further consideration in light of *Albernaz v. United States*, 450 U.S. ——, 101 S.Ct. 1137, 67 L.Ed.2d 275 (1981)." *Missouri v. Brown*, —— U.S. ——, 101 S.Ct. 1735, 68 L.Ed.2d 222 (1981). The overturned decisions, transferred here on June 11, 1981, include: (11) *State v. Martin*, 610 S.W.2d 18 (Mo.App.1980), affirming on first degree robbery and reversing on armed criminal action; (12) *State v. Greer*, 609 S.W.2d 423 (Mo.App.1980), affirming kidnapping, as well as rape and sodomy convictions, but reversing the armed criminal action convictions; (13) *State v. Hawkins*, 608 S.W.2d 496 (Mo.App. 1980), affirming armed robbery judgment, but reversing on armed criminal action; (14) *Brown v. State*, 607 S.W.2d 801 (Mo.App.1980), upholding, on a motion for postconviction relief, the first degree robbery conviction, while vacating the armed criminal action conviction; and (15) *State v. Collins*, 607 S.W.2d 781 (Mo. App.1980), again affirming on first degree robbery, but reversing armed criminal action conviction.

In *Missouri v. Sinclair*, —— U.S. ——, 101 S.Ct. 3044, 69 L.Ed.2d 415 (1981), the Court vacated, remanding to the Court of Appeals, Southern District, "for further consideration in light of *Albernaz v. United States*, 450 U.S. ——, 101 S.Ct. 1137, 68 L.Ed.2d 275 (1981)," (16) *State v. Sinclair*, 606 S.W.2d 271 (Mo.App. 1980), reversing an armed criminal action conviction, while affirming the second degree assault conviction. The cause was transferred on July 9, 1981, to this court for disposition.

ed for review three of our cases [2] in which armed criminal action convictions were set aside under the "Sours" notion of double jeopardy, and on May 26, 1981, directed they too be reconsidered in the light of *Albernaz*. The referenced cases remanded to our appellate courts were subsequently transferred here at our order, and though the mandates are directed to the respective appellate courts, they become the *sine qua non* to our actions thereon, as well as in the cases here on direct remand.

*Haggard*, the cause now before us on original appeal, assumes the stance on the substantive issue as those in which our judgments have been vacated and hence, requires our application of the law under *Albernaz*. The essence of *Albernaz*, quite simply, is that the Legislature may authorize multiple punishments, and if so, imposition of such sentences is not violative of the double jeopardy provisions of the federal Constitution. The question is one of legislative intent, and because the majority concedes the Missouri Legislature *intended to impose punishment* for both crimes here involved, i. e., robbery and armed criminal

action, the analysis should end and convictions on both counts be affirmed. However, the majority refuses to accept the clearly stated directive of the United States Supreme Court.

Our Legislature has provided for multiple punishment upon conviction of armed criminal action under § 559.225, RSMo Supp. 1976, and robbery in the first degree with a dangerous and deadly weapon, §§ 560.120, RSMo 1969, and 560.135, RSMo Supp.1975, though commission of these crimes occur in the same transaction. In so doing, the Legislature has meticulously defined the crimes and prescribed the punishments, making clear its intent (as conceded by the majority) to convict and punish, within prescribed ranges, for each act. However, on January 15, 1980, in *Sours I*, a majority of this court, overturning our earlier decision in *State v. Treadway*, 558 S.W.2d 646 (Mo.banc 1977), *cert. denied*, 439 U.S. 838, 99 S.Ct. 124, 58 L.Ed.2d 135 (1978), and, invoking federal double jeopardy doctrine, declared impermissible the convictions for robbery and armed criminal action obtained in a single trial.[3]

**2.** The United States Supreme Court issued its mandate to this court to reconsider three cases "in light of *Albernaz v. United States*, 450 U.S. ——, 101 S.Ct. 1137, 67 L.Ed.2d 275 (1981)." *Missouri v. Greer*, —— U.S.——, 101 S.Ct. 3000, 69 L.Ed.2d 385 (1981). The vacated cases were: (1) *State v. Williams*, 606 S.W.2d 777 (Mo.1980) (Div. 1), affirming first degree robbery convictions and reversing on armed criminal action; (2) *State v. Kendrick*, 606 S.W.2d 643 (Mo.1980) (Div. 2), again affirming on robbery first degree, but vacating the armed criminal action convictions; and, (3) *State v. Greer*, 605 S.W.2d 93 (Mo.1980) (Div. 2), affirming the second degree murder conviction, but setting aside the armed criminal action judgment.

In addition to these cases on which the Supreme Court has taken action, there is pending in the Court a petition for certiorari filed by the State (bringing the total number of such petitions to 20) in response to a writ of habeas corpus issued by this court releasing Willie Williams. (*See*, Order of June 15, 1981, entered in *Williams v. Wyrick*, No. 62879.) This court also issued opinions in three cases today reversing armed criminal action, relying on *Sours* and *Haggard*: (1) *State v. Fletcher*, 619 S.W.2d 57 (Mo.banc 1981), affirming kidnapping, rape and robbery convictions, but vacating a life sentence for armed criminal action;

(2) *State v. Gaskin*, 618 S.W.2d 620 (Mo.1981), affirming a verdict of first degree robbery (together with assault with intent to kill with malice aforethought) and reversing the armed criminal action conviction; and (3) *State v. Pennington*, 618 S.W.2d 614 (1981), affirming a robbery first degree conviction, but reversing a guilty verdict of armed criminal action. Past reversals and vacations of sentences not challenged by petition for certiorari number approximately 40, including another inmate released by writ of habeas corpus. (It should be noted that permitting successful challenge by habeas corpus thwarts the mandate of *Wiglesworth v. Wyrick*, 531 S.W.2d 713 (Mo.banc 1976), that Rule 27.26 provide the exclusive method by which to attack the validity of a conviction.) These figures, of course, merely represent the tip of the iceberg. They only begin to reflect the total number of criminal cases affected by *Sours*, for they do not include prosecutions for crimes involving a weapon in which armed criminal action was not charged or convictions of armed criminal action set aside by the trial court, all occurring after *Sours I*, January 15, 1980.

**3.** It is of great interest that no statement of rationale was offered to explain how the majority selected the armed criminal action, vis a vis,

While *Sours I* was under consideration for review on certiorari, the Supreme Court decided *Whalen v. United States*, 445 U.S. 684, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980), and addressing the "double punishment" issue, emphasized that "[t]he dispositive question, therefore, is whether Congress did so provide", *id.* at 689, 100 S.Ct. at 1436; i. e., did the Legislature intend to prescribe multiple punishment for the crimes charged; if so, the convictions may stand. As discussed in my dissent in *Sours II* :

> The double punishment doctrine does not constitute a substantive limitation on the legislature's power to define and punish crimes. See *Whalen v. United States*, 445 U.S. [684] 695–696, 100 S.Ct. 1432, 1440, 63 L.Ed.2d 715, 726 (1980) (concurring opinion of White, J.); 445 U.S. 696–699, 100 S.Ct. 1432, 1440, 63 L.Ed.2d 715, 726 (concurring opinion of Blackmun, J.) Westen and Drubel, Towards A General Theory of Double Jeopardy, Sup.Ct. Rev. 81, 112–115 (1978). See also Note "Twice in Jeopardy" 75 Yale L.J. 262, 311–313 (1965). The Court in *Whalen* addressed the multiple punishment issue in terms of whether the judicial action had exceeded the legislative authorization. After a discussion of *Lange*, which as noted above can best be described as a legislative authorization case, the Court held, '[t]he Double Jeopardy Clause at the very least precludes federal courts from imposing consecutive sentences unless authorized by Congress to do so. The Fifth Amendment guarantee against double jeopardy embodies in this respect simply one aspect of the basic principal that within our federal constitutional framework the legislative power, including the

power to define criminal offenses and to prescribe the punishments to be imposed upon those found guilty of them, resides wholly with the Congress.' *Whalen*, 445 U.S. 684, 689, 100 S.Ct. 1432, 1436, 63 L.Ed.2d 715, 722 (1980).

*Sours v. State*, 603 S.W.2d 592, 607 at 609 (Mo.banc 1980).

Shrugging off the teaching of *Whalen* and the Court's mandate that our case be reconsidered in light of that decision, the majority, on August 18, 1980, in *Sours II*, reiterated its position, declaring that although the Missouri Legislature intended punishment for both crimes, it could not constitutionally so authorize, and convictions under both statutes constituted double jeopardy. Dissatisfied with this expression of indifference toward the holding of *Whalen*, the State again petitioned for certiorari, and during pendency of that proceeding, William Scott Sours was, on September 25, 1980, released from the Missouri State Penitentiary. This fact was relayed to the Court by brief of Sours' counsel [4] opposing issuance of the writ, and on January 26, 1981, the petition for certiorari in *Missouri v. Sours* (from *Sours II* ) was denied, with the statement that "Justice Blackmun and Justice Rehnquist would dismiss the petition for a writ of certiorari as moot." *Missouri v. Sours*, —— U.S. ——, 101 S.Ct. 953, 67 L.Ed.2d 118 (1981).

Less than two months later, on March 9, Justice Rehnquist delivering the opinion, the Court decided *Albernaz v. United States*, 450 U.S. ——, 101 S.Ct. 1137, 67 L.Ed.2d 275 (1981), affirming the United States Court of Appeals for the Fifth Circuit which had upheld petitioner's convic-

---

the robbery conviction for reversal. One must ask, what theory of double jeopardy authorizes that result. This question, raised in my dissent in *Sours v. State*, 603 S.W.2d 592, 607 l.c. 610 (Mo.banc 1980) (*Sours II* ), went unanswered by the majority there. Again, in the case *sub judice* a similar ad hoc choice is made by the majority without citation of authority or explication of rationale. This is but another of the flaws inherent in the majority's position, and made particularly apparent by today's decision in *State v. Fletcher*, 619 S.W.2d 57 (Mo.banc 1981), where the majority vacated a life sen-

tence for armed criminal action, and upheld 15 year sentences for rape and kidnapping and a 30 year sentence for robbery. The State might well have preferred vacation of one of the lesser sentences, yet the majority, with its apparent distaste for armed criminal action, makes this choice for the State.

4. A perusal of the brief reveals that mootness resulting from Sours' September release was a principal ground urged for denial of the State's petition.

tions and sentences and denied his claim of double jeopardy. The Court, by way of introduction to its incisive pellucid opinion, noted:

We granted certiorari to consider whether Congress intended consecutive sentences to be imposed for the violation of these two conspiracy statutes and, if so, whether such cumulative punishment violates the Double Jeopardy Clause of the Fifth Amendment of the United States Constitution.

450 U.S. at ——, 101 S.Ct. at 1140.

By its decision the Court, in its concluding paragraphs, removed any question as to its views on the matter, stating:

Thus, the question of what punishments are constitutionally permissible is not different from the question of what punishment the Legislative Branch intended to be imposed. Where Congress intended, as it did here, to impose multiple punishment, imposition of such sentences does not violate the Constitution.

450 U.S. at ——, 101 S.Ct. at 1145.

Immediately after this pronouncement, the Court commenced a succession of orders to Missouri's appellate courts beginning March 23rd, vacating judgments which had reversed armed criminal action convictions when accompanied with convictions of other crimes, and mandating further consideration in the light of *Albernaz*.

On May 12, 1981, the Supreme Court of Delaware, acting responsibly, followed the mandate of the Court under *Albernaz* in a case involving imposition of multiple sentences for (1) first-degree assault, 11 *Del.C.* § 613(1), and (2) possession of a deadly weapon during the commission of a felony, 11 *Del.C.* § 1447. *Hunter v. State*, 430 A.2d 476 (Del.1981). (*Hunter III*). The Delaware court had vacated the multiple sentences in *Hunter v. State*, 420 A.2d 119 (Del.1980) (*Hunter I*), and had reaffirmed its position in light of *Whalen*, upon motion for reargument and clarification, in *Hunter v. State*, 420 A.2d 119, 127 (Del.1980) (No. 215, 1978, decided June 24, 1980) (*Hunter II*). As in the similar Missouri cases, the United States Supreme Court granted cer-

tiorari, vacated the judgment and ordered the Delaware court to reconsider in the light of *Albernaz*. *Delaware v. Hunter*, 450 U.S. ——, 101 S.Ct. 1689, 68 L.Ed.2d 190 (1981). On May 12, 1981, the Delaware court responded with *Hunter III*, recognizing the clear import of *Albernaz* which it described as

the emergence of the evolving rule stands unmistakably clear by virtue of the vote of 6 to 3, cast in the face of the flat contradiction of the concurring Justices, including the author of *Whalen*.

Applying the rule of *Albernaz* to the instant case, we now hold that where the General Assembly intended, as we have found that it did in § 613(1) and § 1447, to impose multiple punishments for two offenses not satisfying the *Blockburger* test, imposition of two consecutive sentences by a court as a result of a single criminal trial does not violate the Double Jeopardy Clause of the Fifth Amendment.

(Footnote omitted). 430 A.2d at 481.

In sum, the Delaware court, recognizing "the rule of supremacy", correctly read and properly followed the "evolving rule" enunciated by the Court in *Albernaz*. It strains credulity how the majority here can do otherwise.

It serves little purpose to casually dismiss *Albernaz* as the majority has done with its unjustified characterization of the Delaware court's so-called "frustration". Under the Rule of Federal Supremacy, we are not permitted such cavalier evasion of the principles of *Whalen* and the mandate of *Albernaz*.

In a manner reminiscent of Quixana's Don Quixote de la Mancha's search for giants that became a comic tilt with windmills, the majority vainly seeks authority to justify its action by suggesting that the denial of certiorari in *Sours II* somehow condones its reversal of the armed criminal action conviction in contravention of the mandate of *Albernaz*. This language appears in the majority opinion:

On January 26, 1981, the United States Supreme Court entered its order denying the petition of the state for certiorari in *Sours II*. Following the same reasoning expressed by the *Hunter* court, *a large majority of the Court* tacitly, if not in fact, *sustained our position* as stated in *Sours II*. Only Justices Blackmun and Rehnquist noted that they 'would dismiss the petition for a writ of certiorari as moot.' —— U.S. at ——, 101 S.Ct. at 953, 67 L.Ed.2d at 118. (Emphasis added).

I submit it is pure conjecture to state that denial of certiorari in *Sours II* constitutes a manifestation of "the same reasoning expressed by the *Hunter* court," or that "a large majority of the Court tacitly, if not in fact, sustained our position as stated in *Sours II*." If the Court had intended the denial of certiorari attain the level of authority set by the majority here, it would not have vacated the judgments rendered in 16 of our Court of Appeals' decisions and in 3 of this court's decisions all bottomed on *Sours*, and in each instance, mandated reconsideration in the light of *Albernaz*. The Court did not order us to reexamine these cases "in light of its denial of the petition for certiorari in *Sours II*", and yet, such is the attenuated position of the majority. Indeed, if the significance of denial of certiorari in *Sours* were as the majority describes, the 19 referenced judgments vacated and remanded to Missouri courts would not have been reviewed; instead, those petitions too would have been summarily denied.

Further, the majority ignores the long established rule that denial of review on certiorari neither imports a decision on the merits of the opinion below, nor forecloses subsequent consideration of the issues determined therein. *United States v. Kras*, 409 U.S. 434, 443, 93 S.Ct. 631, 636, 34 L.Ed.2d 626 (1973); *Hughes Tool Co. v. Trans World Airlines, Inc.*, 409 U.S. 363, 365 n. 1, 93 S.Ct. 647, 650, 34 L.Ed.2d 577 (1973); *United States v. Barnett*, 376 U.S. 681, 689 n.5, 84 S.Ct. 984, 988, 12 L.Ed.2d 23 (1964). As stated in *Agoston v. Pennsylvania*, 340 U.S. 844, 71 S.Ct. 9, 95 L.Ed. 619 (1950),

"denial of the petition seeking to bring here [on certiorari] the decision of the Supreme Court of Pennsylvania carries with it no support of the decision in that case, nor of any of the views in the opinion supporting it." *Id.* at 845, 71 S.Ct. at 9. Hence, the majority's reliance on the denial of the petition for certiorari, for the proposition that the United States Supreme Court gave its blessing to this court's constitutional interpretation in *Sours I and II*, seems quite unjustified.

Finally, we have reached the point where this court must honor the "rule of supremacy" and gracefully accept the Supreme Court's interpretation of the organic law embodied in the Constitution of the United States. By refusing so to do, the majority would burden our Legislature with its view of so-called federal constitutional restraints contrary to those enunciated by the United States Supreme Court under the federal Constitution. In *Oregon v. Hass*, 420 U.S. 714, 95 S.Ct. 1215, 43 L.Ed.2d 570 (1975), the Court stated, "a State may not impose such greater restrictions as a matter of *federal constitutional law* when this Court specifically refrains from imposing them." [emphasis in original] *Id.* at 719, 95 S.Ct. at 1219. The Oregon court's belief that it could "interpret the Fourth Amendment more restrictively than interpreted by the United States Supreme Court" was held "unsupported by any cited authority, is not the law and surely must be an inadvertent error; in any event, we reject it." *Id.* at 719, n. 4, 95 S.Ct. at 1219. This rule of supremacy was again asserted in *North Carolina v. Butler*, 441 U.S. 369, 99 S.Ct. 1755, 60 L.Ed.2d 286 (1979), where, in discussing a criminal accused's rights to counsel and to remain silent, the Court held that by creating an inflexible rule that no implicit waiver by the accused of such rights could ever suffice, the North Carolina Supreme Court had "gone beyond the requirements of federal organic law. It follows that its judgment cannot stand, since a state court can neither add to nor subtract from the mandates of the United States Constitution." *Id.* at 376, 99 S.Ct. at 1759.

We too are required to abide the Court's interpretation of the United States Constitution, and may not burden our Legislature with federal constitutional notions contrary to the Court's mandate. Our duty is clear, yet the majority has avoided it, stating:

> Until such time as the Supreme Court of the United States declares clearly and unequivocally that the double jeopardy provision of the Fifth Amendment to the United States Constitution does not apply to the legislative branch of government, we cannot ... enforce multiple punishments for same offense arising out of a single transaction.

Neither the Oregon court in *Hass* nor the North Carolina court in *Butler* were permitted to journey such an imperious path of nonconformance.

For these reasons, I dissent from that portion of the majority opinion reversing defendant's conviction for armed criminal action.