**STATE of Missouri,
Plaintiff-Respondent,**

v.

**Charles MAYS, Defendant-Appellant.**

No. 11430.

Missouri Court of Appeals,
Southern District,
Division Three.

April 29, 1980.

Motion for Rehearing or to Transfer to Supreme Court Denied May 16, 1980.

Application to Transfer Denied
June 10, 1980.

John D. Ashcroft, Atty. Gen., Kathleen Mills, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

Gerald H. Johnson, Malcolm H. Montgomery, Downs & Johnson, Cape Girardeau, for defendant-appellant.

GREENE, Judge.

Defendant Charles Mays was jury-convicted of first degree robbery in violation of § 569.020, RSMo 1978, V.A.M.S.[1] and was sentenced by the trial court to a term of 20 years' imprisonment as a dangerous offender under the provisions of §§ 558.016 and 558.021. This appeal followed. We affirm.

The relevant facts, as revealed by the record, are as follows. Robert Redfern was the owner and operator of the Ace Package Store in Chaffee, Missouri. On Friday evening, January 19, 1979, Redfern was in the store. A man came in and purchased three cans of beer. Mrs. Dannenmueller, who was employed at a business next door, then came in and the man left. The man who had purchased the beer returned and asked for a bottle of whiskey that was on a shelf behind the cash register. When Redfern got the bottle and turned around, the supposed customer was pointing a pistol at him. He told Redfern to empty the money in the cash register (about $250) into a paper sack and give it to him. Redfern complied. The robber then forced Redfern to go into a back room and lie down on the floor. The robber then left the premises. Redfern called the police and gave them a description of the robber.

The police were able, through investigation of the crime, to obtain a description of the automobile used by the robber, which was a brown 1969 Dodge. About an hour before the robbery, Woodrow Lewis saw and spoke to a man standing beside a 1969 brown Dodge parked across the street from the liquor store. In addition, three teenage boys, two of whom testified at trial, had been flagged down earlier that evening just outside Chaffee by a man whose brown 1969 Dodge was stuck in a ditch. About 11 p. m., on the evening of the robbery, Mrs. Carol Mays, wife of the defendant, went to the Cape Girardeau Police Station and reported that her car was missing. It was a 1969 brown Dodge. The car was recovered by the police from a lake near Chaffee the following day. The car did not appear to have been hot-wired or broken into. When police officers talked to Mrs. Mays, concerning the missing car, they noticed that defendant, who was present, matched the description that had been circulated by the Chaffee Police of the robber. Mrs. Mays told the police that there was only one set of keys to the car.

The police ran a records check on defendant which showed that he had prior convictions, including one for armed robbery. Armed with the information listed above, the police arrested the defendant. After the arrest, pictures of four men, including one of defendant, were shown to Redfern, Mrs. Dannenmueller, Lewis and the three teenage boys. Redfern identified the picture of Mays as the man who robbed him, Mrs. Dannenmueller identified his picture as the man she had seen at the liquor store shortly before the robbery, Lewis identified defendant's picture as the man he had seen outside of the liquor store, and the three teenage boys said that the picture of Mays was the man whose car was in the ditch. Later that day, a lineup was conducted, consisting of Mays and four other men. Redfern, Lewis, and the three teenagers, all picked out Mays as the man they had seen at the times and places indicated above. At trial, two of the teenagers, Scott Knight and Eddie Biler, identified defendant as the man whose 1969 brown Dodge was in the ditch, Lewis identified him as the man he had seen standing against the Dodge across the street from the liquor store, Mrs. Dannenmueller identified him as the man she had seen in the store shortly before the robbery, and Redfern identified him as the robber.

1. Unless otherwise indicated, all references to rules are to Missouri Rules of Court, V.A.M.R., and all references to statutes are to RSMo 1978, V.A.M.S.

Defendant's first point is that the trial court erred by failing to submit a required instruction of robbery in the second degree, a lesser included offense of robbery in the first degree, in violation of § 556.046. The first time that defendant raised this point was in his appeal brief. He did not object at trial to failure to give a second degree robbery instruction, he did not request such an instruction, and he did not raise the point in his motion for new trial. The point has not been preserved for review. *State v. Cook*, 491 S.W.2d 324, 325 (Mo.1973). Secondly, point one totally fails to state "wherein and why" it was error to fail to submit a second degree robbery instruction, thus violating Rule 30.06(d). His point merely states a conclusion and preserves nothing. *State v. Velas*, 537 S.W.2d 881, 883 (Mo.App.1976). The point does not merit plain error review under Rule 30.20.

Section 556.046.2 states: "The court shall not be obligated to charge the jury with respect to an included offense unless there is a basis for a verdict acquitting the defendant of the offense charged and convicting him of the included offense." By statute, first degree robbery may be committed by using or threatening the use of *what appears to be* a deadly weapon or dangerous instrument. § 569.020. Case law is to the same effect. *State v. Keeney*, 425 S.W.2d 85, 89 (Mo.1968). The victim of the robbery, Robert Redfern, testified unequivocally that during the robbery defendant displayed and threatened Redfern with a small caliber blue steel automatic pistol. Redfern testified that it looked like a real pistol, and that he believed it to be a real pistol. There is a clear inference from Redfern's testimony that, by reason of his fear that defendant would shoot him if he did not comply, Redfern handed over the $250 that was in the cash register of the Ace Package Store. Defendant did not testify, and his defense was alibi. Redfern's testimony was not contradicted on the fear of force issue. There was sufficient evidence to convict defendant of first degree robbery. There was no evidence to support the giving of a second degree robbery instruction. Instructions on lesser included offenses must be given only if they are supported by the evidence. *State v. Umfleet*, 538 S.W.2d 55, 60 (Mo.App.1976). Point one is denied.

Defendant's second point is that the trial court committed error by improperly referring to defendant's submitted alibi defense in instruction No. 4, the state's verdict director, for the reason that such error is in violation of MAI–CR 3.02, Notes on Use (2). Defendant did not object to the instruction at the time it was given, or raise the issue in his motion for new trial. In addition, he has not included the text of instruction No. 4 in the argument portion of his brief, in violation of Rule 30.06(e). The point has not been preserved for review. *State v. Cook, supra*, at p. 325; *State v. Timmons*, 574 S.W.2d 950, 956 (Mo.App. 1978). Matters relating to instructions are reviewable as plain error only where the trial court has so misdirected or failed to instruct the jury on the law of the case so as to cause manifest injustice or a miscarriage of justice. *State v. Johnson*, 546 S.W.2d 725, 726 (Mo.App.1977). Plain error review is not justified here, as the references to defendant's alibi defense in the verdict director did not result in a miscarriage of justice or manifest injustice. Defendant does not state how he was prejudiced by the reference to his alibi defense in the verdict director, and we fail to see how he could have been. A separate instruction (No. 6) was submitted on alibi. The added reference in the verdict director (No. 4) merely reminds the jury that they cannot convict defendant if they have a reasonable doubt that he was present at the time and place the robbery was committed. This benefited defendant, rather than harmed him, as it gave him two bites of the same apple. A defendant may not complain of trial errors committed in his favor, including the submission of erroneous instructions. *State v. Lowery*, 565 S.W.2d 680, 683–684 (Mo.App.1978). Point two is denied.

Defendant's third point is that the trial court committed error in reading the

preliminary instructions to the jury out of sequence by reading MAI–CR2d 2.01 to the jury before he read MAI–CR2d 1.06. Deja vu. No objection was made as to the order in which the instructions were read at the time they were given, and the point was not raised in defendant's motion for new trial. In addition, the text of the instruction in question is not set out in appellant's brief in violation of Rule 30.06(e). Defendant does not state in his brief how he was prejudiced by the procedure that was followed, and we cannot see how he could have been. The point is not reviewable as plain error, as reading the instructions out of order did not result in manifest injustice. Notes on Use (1) to MAI–CR2d 1.06 states: "This instruction must be read immediately after the jury is sworn and before reading MAI–CR 2.01 and 2.02. Rule 20.02(a) (now 28.02[a]). It will *not* be reread to the jury at the conclusion of the evidence and will *not* be numbered or given to the jury when it retires to deliberate."

MAI–CR2d 1.06 informs the jury of the sequence of events that will follow in the trial. MAI–CR2d 2.01 generally tells the jury that they are to determine the facts, and tells them what criteria they may use in making fact determinations. MAI–CR2d 2.02 generally tells the jury what is evidence and what is not. The trial judge first read 2.01 and then started to read it again. Realizing his mistake, and recognizing that he had not read 1.06, he called the attorneys to the bench for an off-the-record conference. He then read 1.06, noted to the jury that he had previously read 2.01 to them, and said "and, with the agreement of the attorneys, I'll now read to you instruction No. 2", (2.02), which he then proceeded to do. Although it was error to read 2.01 first, any possible prejudice was cured by the remarks of the trial judge after reading 1.06, and defense counsel by agreeing to the procedure that was followed, waived any objection he might have had. The order in which the instructions were read is not the kind of error which calls for a new trial because of manifest injustice. Defendant was not entitled to a perfect trial—only a fair one. Point three is denied.

In his fourth and last point, defendant contends that the trial court erred in admitting in-court identification of the defendant by the state's witnesses, as said identification was a direct result of unconstitutional pre-trial identification procedure, in violation of the fourth, sixth and fourteenth amendments of the Constitution of the United States and the Missouri Constitution. In the pre-trial stage, defendant filed a motion to suppress the identification procedures for the alleged reason that he was arrested without probable cause. An evidentiary hearing was held, after which the motion was overruled. At trial, defendant did not object when he was identified by various witnesses. If defendant's motion to suppress is overruled, he must keep the issue alive by objecting to the offered evidence at trial. By failing to do so, he has not preserved the point for review. *State v. Bryson*, 506 S.W.2d 358, 361 (Mo. 1974).

In addition, defendant's point, as stated, is nothing but glittering generalities and abstract conclusions. It does not state wherein and why the trial court erred, in violation of Rule 30.06(d), in permitting the identification testimony to go to the jury. The mere assertion of a denial of constitutional rights in the point relied on is not enough to preserve the point for review. Plain error review is not warranted on this point, as the record shows that defendant did not suffer from manifest injustice or a miscarriage of justice by reason of the trial court's ruling on the motion to suppress.

The lineup procedures were not impermissibly suggestive and the in-court identification was positive and untainted. A complete review of the record indicates no error, plain or otherwise, in any ruling or action of the trial judge. The evidence of defendant's guilt was clearly sufficient for the jury to find, beyond a reasonable doubt, that the defendant was guilty as charged.

The judgment is affirmed.

All concur.