STATE of Missouri, Respondent,

v.

Edward H. PENNINGTON,
Jr., Appellant.

No. 61928.

Supreme Court of Missouri,
Division No. 2.

July 14, 1981.

Rehearing Denied July 29, 1981.

Larmar Dye, Kansas City, for appellant.

John Ashcroft, Atty. Gen., Mark W. Comley, Asst. Atty. Gen., Jefferson City, for respondent.

STOCKARD, Commissioner.

Edward H. Pennington was found guilty by a jury of robbery in the first degree and of armed criminal action, and he was sentenced to imprisonment for twelve years for each offense, the sentences to be served concurrently. Appellant challenges the validity of § 552.010–030 (all statutory references are to RSMo 1978). Appellate jurisdiction is in this Court. Art. V, § 3, Mo. Const.

The sufficiency of the evidence is not challenged, and therefore the pertinent facts will be briefly stated. On September 25, 1978, appellant entered the 7–11 Store at 3906 Central, Kansas City, Missouri and inquired about some Allerest tablets and chewing gum. He then pointed a gun at the clerk and told her to open the cash register and give him all the money. She opened the drawer to the register and stood back. Appellant took the money from the cash register, and in doing so he activated a surveillance camera. The next morning a police officer recognized appellant as the person in the picture taken by the camera. Appellant was taken into custody, and at a lineup the clerk at the 7–11 Store identified him as the robber.

Appellant was arraigned on November 2, 1978 and entered a plea of not guilty. More than six months later appellant filed an untimely (see § 552.030.2) written notice of his intention to rely on the defense of "mental disease or defect." A hearing was requested by the prosecutor at which appellant reported the result of a previously held private psychological examination in which Dr. Franklin C. Boraks determined that appellant was not a psychopath and did not have a mental defect. Appellant desired an opinion by a psychiatrist, and the trial court ordered a psychiatric examination be performed at Western Missouri Mental Health Center. The report was filed on July 11, 1979, and it stated that appellant had the capacity to proceed with the trial, and had no mental disease or defect at the time of the alleged offense. Based on this report the trial court held appellant to be competent to stand trial. Appellant's sole defense was alibi, and none of the witnesses testified that he had a "disability of mind" or a "mental disease or defect." See § 552.030.7.

The precise contentions in appellant's point are not easily determined. We shall set forth the material parts of the point, but in order to give portions of the point some meaning it is necessary to change some punctuation and add some words. "The trial court erred in overruling appellant's motion to dismiss [which was] filed immediately before trial, at the close of State's evidence and at close of all evidence, and [in overruling his] motion for new trial, on grounds that the State's accusatory process fails to provide due process of law * * * in that the State's Chapter 552, [pertaining to] mentally ill persons in criminal cases[,] is unconstitutionally vague and does not apply the Disability of Mind definition of 'Mental disease or defect[,]' [w]hich * * * test is constitutionally certain[.] In each and every case where the State accuses a person of 'criminal offense' such as the instant case, [in order] to provide defendant with the due process of law and equal protection of the law required * * * [it is necessary] that the trial court [be] fully appraised of the constitutionally certain Disability of Mind test by being informed in appellant's motion for acquittal * * * that the State's evidence failed to afford three options to the jury. (1) Disability of Mind—in the conduct in question[.] The defendant for the most part lacked the capacity for rational conduct in regard to the criminal significance of the act; (2) Partial Disability of Mind—the defendant was for the most part rational but did not suffer a material lack of the kind; or (3) No Disability of Mind—no material lack of rationality. *The trial court erred in not instructing the jury as to the constitutionally certain Disability of Mind test as set out herein.*" (Emphasis in the appellant's brief.)

On November 25, 1980, this Court advised appellant's attorney that the above point did not comply with the rules in that it did not "briefly and concisely set out the rulings of the [trial] court which are sought to be reviewed as is required by Rule 30.-06(d)." Counsel was directed to redraft the point. On December 12, 1980, appellant filed a "supplemental brief" in which he set forth what he termed "additional supplement to the points relied on." As far as correcting the noted deficiency, it added nothing to the original point, but it does include the statement by way of a conclusion that "[t]he listing of the criminal or antisocial acts makes Section [552.010]

vague, unconstitutional, and chills defendants from the use of said Chapter 552." We shall, in a most liberal exercise of judicial discretion, review those contentions we are able to glean from the point and the "additional supplement" thereto. We consider these contentions to be presented:

1. Chapter 552, and particularly § 552.-010 is unconstitutional because (a) it is vague, and (b) by listing in § 552.010 the "criminal or antisocial acts" it "chills" persons charged with a crime from the use of Chapter 552.

2. Chapter 552 does not apply the Disability of Mind definition of "mental disease or defect." [1]

3. It was a denial of due process of law and equal protection of the law for the court to fail to instruct the jury as to the Disability of Mind test.

We should first note that appellant filed a written notice, but out of time, of his intent to rely on "the defense of non-responsibility for any alleged criminal conduct because as a result of mental disease or defect he did not know or appreciate the nature, quality or wrongfulness of his conduct or was incapable of conforming his conduct to the requirements of the law." At the request of the prosecution a hearing was held, and as a result the trial court ordered appellant be examined at the Western Missouri Mental Health Center. The findings of the examining doctor were that appellant "does not have a mental disease or defect," that he "has the capacity to understand the proceedings against him and to assist his attorney in his defense," and that "at the time of the alleged criminal conduct, [appellant] did not have a mental disease or defect, did appreciate the nature and quality of his actions and was capable of conforming his conduct to the requirements of the law."

 Certain basic rules should be set forth before we attempt to evaluate appellant's contentions. The legislature is empowered to enact statutes defining criminal responsibility and standards for determination of legal insanity. *Leland v. Oregon*, 343 U.S. 790, 72 S.Ct. 1002, 96 L.Ed. 1302 (1951); *State v. McGee*, 361 Mo. 309, 234 S.W.2d 587 (banc 1950); *State v. Sturdivan*, 497 S.W.2d 139, 143 (Mo.1973). Pursuant to this authority the legislature of Missouri has enacted Chapter 552, RSMo 1978, and particularly §§ 552.010, 552.020 and 552.030, adopted from A.L.I. Model Penal Code, but neither the Chapter nor the sections thereof refer specifically to any particular mental disease or defect, but they consider all classifications and symptoms of mental disease. *State v. Sturdivan*, supra; Missouri's Mental Responsibility Law, A Symposium, 19 Mo.Bar J. 683 (Mo.1963). A finding of competency to stand trial does not affect a defendant's ability or right to plead not guilty by reason of mental disease or defect, *State v. Brizendine*, 433 S.W.2d 321 (Mo. banc 1968), and even though the notice was untimely appellant can be considered to have entered such a plea in this case.

 In his point, and in the argument under the point, appellant makes no attempt to demonstrate in what respect Chapter 552 is unconstitutionally vague. The doctrine of vagueness, as applied to the definition of crimes, is that the legislature must "inform the citizen with some degree of specificity just what acts are prohibited, thus affording an 'understandable rule of

---

1. An exposition of the Disability of Mind doctrine is set forth in a book, published by the University of California Press, entitled *Mental Disabilities and Criminal Responsibility* by Herbert Fingarette and Ann Fingarette Hass. Appellant did not provide in his brief a definition of "Disability of Mind." But at page 200 in the book above referred to a definition of the malady is set forth as follows: "If a person's mental powers are impaired in such a way as to disable him at least to some material extent from rational control of his conduct in respect to the

requirements of the criminal law, the person in that respect acts with materially *lessened* criminal responsibility. If the impairment is of such magnitude that he is in chief part so disabled, he acts in that respect *without* criminal responsibility. The generic name we propose for such a condition is 'Disability of Mind' (or occasionally 'Mental Disability,' and in the briefest form 'D.O.M.'). Where the impairment is material but not predominant, it is 'Partial Disability of Mind.' "

conduct.' " *State v. Perkins*, 380 S.W.2d 433, 434 (Mo.1964). See also *State v. Smith*, 431 S.W.2d 74 (Mo.1968). We doubt, however, that the vaugeness doctrine, at least as it is applied to statutes defining crimes, has any application to this case. Chapter 552 does not prohibit an accused from any conduct. It does prohibit the State from trying, convicting or sentencing any person who by reason of a mental disease lacks the capacity to understand the proceedings against him or to assist in his own defense, and as stated in *Drope v. Missouri*, 420 U.S. 162, 95 S.Ct. 896, 43 L.Ed.2d 103, 114 (1975), it "jealously guards" a defendant's right to a fair trial, and is "constitutionally adequate to protect a defendant's right not to be tried while legally incompetent." We find no merit to appellant's challenge to Chapter 552 on the ground of vagueness.

■ Appellant argues that he would have "spoken freely to the court [appointed] psychiatrist if [§ 552.010] had not chilled him by its vagueness, its reference to 'repeated criminal or otherwise antisocial conduct, whether or not such abnormality may be included under mental illness, mental disease or defect in some classification of mental abnormality or disorder.' " Appellant then argues that he was charged with two felonies, and had previously been convicted of robbery, and the "above definition" decides without a jury "that he cannot have the benefit of Chapter 552 even though the facts could be brought to a jury that would convince a jury by the preponderance of the evidence that he was not entitled to the benefit of the Durham rule." He concludes his argument by asserting, "[t]he Missouri statute is plainly unconstitutional for the defects given it for impermissible vagueness, for chilling appellant by throwing the mishmash of medical, psychiatric, and social engineering words in it that need not be there."

First, there is nothing to indicate that appellant ever read or was aware of the wording of § 552.010, or that he was advised by anyone, including his lawyer, not to talk freely to the examining psychiatrist because of the language of this section.

Second, the words of § 552.010 relied on by appellant as creating a chilling effect, are a part of the definition of what the terms "mental disease or defect" do *not* consist, and appellant does not attempt to demonstrate how those words when so used could create a "chilling" effect. Third, the wording of § 552.010, or the fact that the psychiatrist reported that appellant did not have a mental defect, as defined, did not result in the trial having "to proceed on its merits shorn of the defense of mental disability affecting criminal responsibility" as appellant asserts in his brief. Appellant had the right to summon and cross-examine the psychiatrist who rendered the opinion on the issue of fitness to proceed and to offer evidence upon the issue. § 552.020.6. Also, "[t]he issue of whether any person had a mental disease or defect excluding responsibility for his conduct is one for the jury to decide upon the introduction of substantial evidence of the lack of such responsibility." § 552.030.7. As previously noted, § 552.020 and § 52.030 do not refer specifically to any particular mental disease or defect. Therefore, appellant was entitled to present evidence of his own peculiar mental aberration, but he elected not to introduce any evidence regarding mental disease or defect. Instead his sole defense at trial was alibi. Appellant's contention that Chapter 552 prevented the jury from considering a defense of mental disease or defect is the result of an erroneous interpretation of § 552.030, and not because of a constitutional infirmity.

■ Appellant's remaining contention, as we have determined it, is that it was a denial of due process and equal protection of law for the trial court to fail to instruct the jury as to the Disability of Mind test.

Appellant did not object to any of the instructions given, and did not present any assignment of error in his motion for new trial pertaining to instructions. As noted there was no evidence pertaining to his "insanity" defense. In § 552.030.7 it provides that in the absence of any substantial evidence pertaining to lack of responsibility "the presumption [of freedom of mental

disease or defect] shall be conclusive." In these circumstances there was no duty on the trial court to instruct the jury on what appellant calls the Disability of Mind test.

In his third point appellant asserts that the trial court erred in not suppressing a statement made by him, testified to by Police Officer Hayslett, that "appellant admitted the picture [taken by the surveillance camera] was of him but [that] he would not tell where the gun was."

 This point is insufficient. It does not state wherein and why the ruling of the court was erroneous. Rule 30.06(d). As written it preserves nothing for review. *Thummel v. King*, 570 S.W.2d 679, 685 (Mo. banc 1978). Also this contention was not presented in appellant's motion for new trial. Objections to statements allegedly given in violation of a defendant's constitutional rights, must be properly preserved and presented to the trial court. *State v. Miller*, 593 S.W.2d 895, 897 (Mo.App.1980). This issue of whether the statement of appellant should have been suppressed was presented in a pretrial motion, and after a hearing the trial court denied the motion. The testimony of Officer Hayslett at the trial was essentially the same as that at the hearing on the motion to suppress, but appellant made no objection to the testimony. For this additional reason the issue presented by the motion to suppress is not preserved for appellate review. *State v. Toliver*, 544 S.W.2d 565, 568 (Mo. banc 1976). Notwithstanding the above, we have sifted through appellant's argument in an effort to determine his contentions, and shall review them as though appellant contended they constituted plain error.

At the hearing on the pretrial motion Officer Hayslett testified that he and Officer Coleman went to appellant's house. Officer Hayslett went upstairs where he met appellant and showed him the picture taken by the surveillance camera and told him that the police had "probable cause" to believe that he was "the suspect in the robbery in the picture." On the way out of the house the officer told appellant he was under arrest, and he then gave appellant his

"*Miranda*" rights. They then entered the patrol car and the officer again gave appellant his "*Miranda*" rights, and appellant acknowledged that he understood them. While in the patrol car, appellant asked to again see the picture taken by the surveillance camera and Officer Hayslett showed it to him. According to Officer Hayslett appellant then "admitted to [Officer Hayslett] that it [the picture] was him, but he said that the gun that was involved, that he would not tell us about where the gun was located, where it was hidden." Officer Hayslett denied that appellant had handcuffs placed on him, and he stated that he did not question appellant about his involvement in the robbery.

Appellant testified at the pretrial hearing that the "*Miranda*" warnings were given only once, but that he understood them and that he knew his rights. He denied that he made any statement to Officer Hayslett, and that when Officer Hayslett asked about the robbery he replied, "I don't know what you're talking about." He also testified that Officer Hayslett handcuffed him, and that after he entered the patrol car the handcuffs were removed and the officer explained that the removal would make it more comfortable for the ride downtown. Although appellant denied that he made any statement, his argument in his brief is that the removal of the handcuffs constituted an inducement to obtain the statement.

 The review by this Court of the trial court's failure to suppress the statement of appellant as testified to by Officer Hayslett is limited to the finding of manifest injustice or a miscarriage of justice, and we conclude that the court properly overruled the motion to suppress.

 Appellant's fourth and last point is that the trial court erred in "admitting testimony of line up identification in absence of appellant's counsel, * * * and it [the lineup] was unduly suggestive and conducive to irreparable misidentification * *."

This point also is inadequate in that it does not set forth the ruling or action of the

trial court sought to be reviewed and wherein and why it is contended to be erroneous. Rule 30.06(d).

 Strictly construed, appellant's contention is that counsel was not present when the identification testimony was admitted at trial. The record disputes this. We cannot determine from the record the precise date appellant was first charged by indictment or information, but the lineup was held on September 26, 1978, and it affirmatively appears that the charge was filed thereafter. In the event appellant intended to refer to holding of the lineup without counsel present, there was no requirement that counsel be present. *State v. Quinn*, 594 S.W.2d 599 (Mo. banc 1980).

We note that the victim of the robbery positively identified appellant at trial without objection, and she was permitted to testify that she picked appellant out of the lineup without any objection by appellant. Therefore, any challenge to the method of conducting the lineup is not preserved for appellate review. *State v. Valentine*, 584 S.W.2d 92 (Mo. banc 1979); *State v. Greenlaw*, 593 S.W.2d 641 (Mo.App.1980).

Appellant argues that the lineup was suggestive and conducive to irreparable misidentification because he was placed in the middle of the three-man lineup, he was the heaviest in build, and because the victim was told that if the person who robbed her was in the lineup he would not be wearing glasses.

It is unreasonable to assume that the members of a lineup would be identical in appearance, and a dissimilarity alone in the physical appearance is insufficient to establish an impermissible suggestiveness. *State v. Gillum*, 540 S.W.2d 167 (Mo.App.1976); *State v. Abrams*, 597 S.W.2d 230 (Mo.App.1980). As to the statement that the robber would not be wearing glasses at the lineup, there is no showing that either of the two other members of the lineup were wearing glasses. Therefore, if suggestive, the statement was equally suggestive as to all participants in the lineup. We find appellant's challenge to the lineup to be without merit.

The judgment as to armed criminal action is reversed and the appellant discharged as to that charge. *State v. Haggard*, 619 S.W.2d 44 (Mo. banc 1981). The remainder of the judgment is affirmed.

PER CURIAM:

The foregoing opinion by STOCKARD, C., is adopted as the opinion of the court.

WELLIVER, P. J., and HIGGINS and SEILER, JJ., concur.