John Wilton WILLIS, Movant-Appellant,

v.

STATE of Missouri, Respondent.

No. 12229.

Missouri Court of Appeals,
Southern District,
Division One.

February 11, 1982.

Motion for Rehearing and to Transfer to
Supreme Court Overruled
March 4, 1982.

Application to Transfer Denied
April 13, 1982.

Susanna Jones, Legal Aid, Joplin, for movant-appellant.

John D. Ashcroft, Atty. Gen., Kristie Green, Asst. Atty. Gen., Jefferson City, for respondent.

GREENE, Presiding Judge.

Movant, John Wilton Willis, was jury-tried and convicted of one count of forcible rape and two counts of robbery in the first degree. The trial court sentenced Willis to 40 years' imprisonment on the rape charge and 30 years' on each count of robbery, with the sentences to run consecutively under authority granted by the Second Offender Act. The convictions were upheld on appeal. *State v. Willis*, 577 S.W.2d 655 (Mo. App.1979). Willis was imprisoned and later filed a motion to vacate the judgments and sentences in question, as authorized by Rule 27.26.[1] The state filed a motion to dismiss the proceeding. The trial court made findings of fact and conclusions of law, and sustained the state's motion to dismiss.

Willis then filed an amended 27.26 motion. Allegations in the amended motion

---

1. Unless otherwise indicated, all references to statutes are to RSMo 1978, V.A.M.S., and all references to rules are to Missouri Rules of Court, V.A.M.R.

were basically the same as those raised on the original motion. The state again filed a motion to dismiss, after which the trial court made new findings of fact and conclusions of law that were substantially the same as the original findings and conclusions, and denied the amended motion to vacate without holding an evidentiary hearing. This appeal followed.

Although the sufficiency of the evidence to sustain the convictions is not in issue on this appeal, a brief statement of facts is necessary to clearly identify and decide the points of claimed error. In the early morning hours of April 4, 1977, two security guards from Southwest Missouri State University in Springfield, Missouri, noticed a black male "window peeping" at Wells House, a dormitory on campus. They accosted him and asked for his name and address, and inquired as to what he was doing. He gave them what turned out to be a false name and address. They were not satisfied with his answers to their questions and asked him to leave the area. He did so.

The guards kept the man under surveillance and followed him to the vicinity of a nearby house where they lost sight of him. The guards then called the Springfield Police Department and reported the incident. Shortly thereafter, a black male unlawfully entered the house at the location where the security guards had last seen the prowler, raped a young woman who resided there, and took money from two other female residents, all by means of threats of deadly force. The intruder was armed with a knife which he kept at the throat of the rape victim during the rape and robberies. All of the crime victims were white.

The three girls called the police and reported the rape-robberies. Police came to the crime scene, and were joined there by the security guards. The girls gave the police a description of the man who had committed the rape and robberies, and the security guards gave them a description of the man they had seen near the girls' home, as well as the name and address the man had given when they had interrogated him.

One of the police officers realized the description matched that of Willis, and knew where he lived. Police officers then went to movant's home and arrested him. They did not have an arrest or search warrant. Willis was clad in a pair of pants when the officers entered. The officers told him to put on a shirt, which he did, and the officers took Willis to jail.

The next morning, movant's shirt and pants were taken from him and analyzed for possible evidence. Hair taken from the front of his shirt closely resembled hair taken from the rape victim's head, but was not positively identified as such. The hair samples were introduced in evidence at trial. All three girls identified Willis at trial as the man who raped and robbed them. The two security guards identified movant at trial as the man they had seen near the victims' home shortly before the crimes were committed. Shortly after the rape, the police obtained scrapings from underneath the victim's fingernails, and samples of her vaginal fluids. There was no evidence that the samples were ever scientifically analyzed or, if so, what the results were.

At trial, movant's alibi witnesses were his white, common-law wife, her sister, and a white male friend of his wife. Their testimony was to the effect that Willis was in his home at the time of the crimes. It is evident from the verdicts that the jury did not believe them. The jury of nine women and three men who convicted Willis were all white persons.

Movant relies here on three points of claimed error which were that the trial court erred in denying his 27.26 motions without evidentiary hearing because 1) "the failure to ask voir dire questions directed to racial bias resulted in movant's being denied a fair trial in violation of his rights under the Fifth, Sixth and Fourteenth Amendments of the U. S. Constitution", 2) "that the evidence seized from movant was inadmissible because of the arrest of movant in his own home without an arrest warrant and with no exigent circumstances", and 3) "evidence in the possession of

the state which was not produced at trial would prove that movant could not have been the attacker of K__ K__ [the victim of the rape]."

This assemblage of conclusions and speculations violates the dictates of Rule 30.06(d) as none of the points state what actions or rulings of the trial court on the matters in question are sought to be reviewed, and wherein and why such actions and rulings were erroneous. *State v. Mays*, 598 S.W.2d 613, 616 (Mo.App.1980); *Harmon v. State*, 603 S.W.2d 85, 86 (Mo. App.1980). Points relied on which are written contrary to mandatory requirements of Rule 30.06(d), which cannot be comprehended without resorting to the transcript or other portions of the brief, preserve nothing for appellate review. *State v. Holt*, 603 S.W.2d 698, 701 (Mo.App.1980). Although not requested, we exercise our discretionary right to review under Rule 30.20 to determine if any plain error affecting movant's substantial rights occurred at the trial court level which resulted in manifest injustice or a miscarriage of justice.

In order for a 27.26 motion to warrant an evidentiary hearing, it must allege facts, not conclusions, which, if not refuted by the file and record in the case, show prejudice to the movant, which would entitle him to relief. *Tollison v. State*, 556 S.W.2d 455, 457 (Mo.App.1977). In this case, the trial court made extensive findings of fact and conclusions of law, as required by Rule 27.26(i), on the original and amended motions, and entered judgment denying relief on both motions. Our review is limited to a determination of whether the findings, conclusions and judgments of the trial court were clearly erroneous. Rule 27.26(j); *Tomich v. State*, 607 S.W.2d 811, 812 (Mo.App.1980). This test applies only to matters raised in the motions and thereafter briefed on appeal. *Dixon v. State*, 604 S.W.2d 782, 783 (Mo.App.1980).

While it is difficult to ascertain from a reading of the points relied on in this appeal exactly what movant is complaining about, we have determined that, on the lack of voir dire issue, he is contending that his

trial counsel was ineffective by reason of his failure to interrogate the jury panel on possible racial bias. Willis claims that such questions were "constitutionally mandated", citing *Ham v. South Carolina*, 409 U.S. 524, 93 S.Ct. 848, 35 L.Ed.2d 46 (1973), and that the failure of his counsel, and of the trial court, to ask voir dire questions on the race issue was, per se prejudicial.

In its findings on this issue, the trial court stated that the original and amended 27.26 motions (hereinafter called motions) did not allege that the jury panel was prejudiced against Willis, did not allege that he had requested voir dire on the racial issue and had been refused, did not allege what the answers to racial based questions would have been, and did not allege how movant was prejudiced by a failure to ask such questions.

The trial court further found that since Willis did not allege facts showing prejudice to him on this issue, he was not entitled to any relief. The trial court, in its findings and conclusions, did not address the question as to whether racial based voir dire questions were constitutionally mandated under the facts of this case. Movant's reliance on *Ham v. South Carolina*, supra, on this issue, is misplaced. In *Ham*, a black man was tried for possession of marijuana in a South Carolina state court. He was well known in the locale of his trial as a civil rights activist. His defense was that law enforcement officers had framed him on the marijuana charge to get even with him for his civil rights activities. The trial court refused Ham's request to voir dire the jury on possible racial prejudice. The supreme court of the United States held that such refusal, *under the facts presented there*, constituted a denial of due process, and reversed Ham's conviction. *Ham* did not hold that racial based voir dire questions are constitutionally mandated in all cases.

Racial prejudice cannot be inferred from the fact that the defendant is of one race or ethnic origin while the victim, or the witness, or the jury, is of anoth-

er. Absent facts showing prejudice, and no such facts are shown here, the question of whether the trial court, or movant's trial counsel, should have interrogated the jury panel as to possible racial bias does not rise to the level of constitutional dimensions. *Ristaino v. Ross*, 424 U.S. 589, 47 L.Ed.2d 258, 265, 96 S.Ct. 1017 (1976).

We have searched the record, and fail to find any fact showing that lack of voir dire on the race issue prejudiced the movant. The trial court's conclusion that Willis is not entitled to relief on this point is based on fact, and is not clearly erroneous.

In his second point relied on, movant argues that, even if his arrest in his home was with probable cause, it was made without an arrest warrant, without consent, and without exigent circumstances and, therefore, the arrest was illegal, which resulted in the clothing he was wearing being impermissibly seized, so the clothing and hair samples taken by police from the clothing were not admissible evidence, under the fruit of the poisoned tree doctrine; therefore, admitting such items into evidence, over objection, was prejudicially erroneous, citing *Payton v. New York*, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). In *Payton*, the majority of the Supreme Court of the United States held that the Fourth Amendment of the United States Constitution prohibited police from making a warrantless and nonconsensual entry into a suspect's home in order to make a "routine" felony arrest, in the absence of "exigent" circumstances; that evidence seized during such an unlawful entry was inadmissible; and, reversed Payton's conviction. Payton had been convicted of the murder of a gas station attendant. Evidence seized in his home after the warrantless entry was a material element in the state's case.

We share the concern expressed by Justice White in his dissent in *Payton* that the decision in *Payton* finds little or no support in the common law, or in the text or history of the Fourth Amendment, and question, as did Justice Rehnquist in his dissent, whether arrests for suspicion of murder, as in *Payton*, or for rape and robbery, as here,

are "routine" felony arrests. If they are, something is sorely wrong with the process of the administration of criminal justice, and we are at a loss to say what a "non-routine" arrest would be.

■ Be that as it may, the real question on this point is whether we are bound by the result of *Payton* in this case. The trial of this case was in 1977. *Payton* was decided in 1980. At the time of trial, a warrantless arrest on probable cause in felony cases, of a suspect in his home, was legally permissible. After *Payton* was decided, it was not, unless it was shown that there were exigent circumstances justifying such an arrest. Movant urges us to decide that the decision in *Payton* is retroactive. We decline to do so.

The constitutional protections guaranteed by the Fourth Amendment were made applicable to the individual states via the Fourteenth Amendment in the landmark decision of *Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). Four years later, the supreme court determined that the exclusionary rule announced in *Mapp* did not apply to state court trials which became final before *Mapp* was decided, and that the *Mapp* rule applies from the date of judgment of the supreme court in that case and not from the date of the seizure involved in the state court cases. *Linkletter v. Walker*, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965); *Angelet v. Fay*, 381 U.S. 654, 85 U.S. 1750, 14 L.Ed.2d 623 (1965). Similar determinations have been made regarding other important constitutional guarantees. See, *Johnson v. New Jersey*, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966), holding that the *Miranda* decision was not retroactive; and *Jenkins v. Delaware*, 395 U.S. 213, 89 S.Ct. 1677, 23 L.Ed.2d 253 (1969), ruling that *Miranda* is inapplicable to retrials of cases first tried prior to the *Miranda* decision.

■ Movant has misconceived the true operation of *Payton*. He argues that the rule of *Payton* should be applied retrospectively as it merely announces a constitutional principle inherent in the Fourth Amendment. Such is not the case. The exclusion-

ary rule based on the Fourth Amendment is an extraordinary sanction, judicially imposed, to limit searches and seizures to those conducted in strict compliance with the Fourth Amendment. See *U. S. v. Wallace & Tiernan Co.*, 336 U.S. 793, 69 S.Ct. 824, 93 L.Ed. 1042 (1949); *State v. Davis*, 375 So.2d 69 (La.1979). It is a judicially created remedy designed to safeguard Fourth Amendment rights generally, rather than a personal constitutional right of the party aggrieved. *U. S. v. Calandra*, 414 U.S. 338, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974).

Therefore, insofar as *Payton* merely extends the scope of the exclusionary rule pronounced in *Mapp v. Ohio*, supra, which rule is not in and of itself a constitutional guarantee, the *Payton* holding should be applied only prospectively, in keeping with the established principle that *Mapp* itself operates only prospectively. The trial court's findings and conclusions on this point relied on and preserved were that the decision in *Payton* does not apply here, and that there were no facts alleged in the motions entitling movant to relief on the arrest and search and seizure questions. Those findings and conclusions were not clearly erroneous.

Movant's last point relied on is that evidence in the possession of the state which was not produced at trial would prove that movant could not have been the attacker of the rape victim. We are at a loss in reading the point as to what evidence movant is referring to. In reading the argument portion of the brief on this point, we note that Willis is referring to scrapings taken from under the fingernails, and fluids taken from the vaginal samples of the rape victim shortly after the attack.

■ There is no allegation as to what evidence beneficial to movant would have been discovered if such physical evidence had been scientifically examined, and nothing in the record to show any scientific examination of the evidence. Movant's allegation of error on this point is not supported by case authority in the point relied on, or in the argument in support thereof. If the point is one for which precedent is appropriate and available, it was movant's duty to recite it. If the point is one for which precedent is unavailable, counsel should so state, and explain why precedent is unavailable. *Thummel v. King*, 570 S.W.2d 679 (Mo. banc 1978). Counsel has not done so.

The thrust of movant's argument on this point is that *if* vaginal fluids of the rape victim had been analyzed, and *if* such fluids contained sperm samples, and *if* such samples had been subjected to a new scientific analysis, unknown to movant at time of trial, that the sperm samples *may* have shown the blood type of the sperm giver, which *if* matched against sperm samples of Willis, would possibly show that movant had a different blood type than the rapist. This maze of assumptions almost boggles the mind, and is completely irrelevant.

In the first place, there is nothing in the record to suggest that a scientific examination of the evidence in question would have produced the results suggested by Willis, and there is nothing in the record to even suggest that the prosecuting attorney withheld such evidence, knowing that it would benefit Willis.

■ In the second place, there was no legal requirement that the prosecuting attorney test the victim's vaginal fluid samples to determine if sperm was present. Ejaculation is not a necessary legal element in a rape case, as proof of penetration is sufficient to show the act of sexual intercourse. On the penetration issue, the uncorroborated testimony of the victim is all the evidence that is legally required.

■ Movant concedes that physical scientific evidence is not required to sustain a rape conviction, but argues that it should be, and urges us to change the law in this area. His reasoning is that because of the relaxed sexual mores of our time, a woman today is more apt to engage in extra-curricular sexual activities than her sisters of yesteryear. He claims that the sedate, prim ladies of the past would never even mention sex in public, let alone indulge in it outside the confines of the bedroom that they

shared with their husband and, therefore, if they took the witness stand and said they had been raped, such statement was undoubtedly true. He further argues, in effect, that modern, liberated women sleep around so much that there should be prima facie doubt as to whether one of their sexual encounters constituted rape and, therefore, corroboration of their claim of rape should be required, regardless of the circumstances.

We regard such an argument as having no basis in fact. Women are more vulnerable to rape today than they were in days gone by because they spend more time outside the home, in work and social pursuits than they did in the past, and, for such reason, are more susceptible to attack. In regard to their ability to distinguish rape from voluntary sexual intercourse, modern day women appear, to us at least, just as candid, frank, and truthful as women of preceding generations. In addition, we could not change the law of rape, by judicial fiat from this court, even if we wanted to. If movant is contending that a great social upheaval militates the change in the law which he suggests, he should take his contentions to the Missouri Legislature, which is the body that should decide what evidence is necessary to sustain a rape conviction. If he is arguing that his contention is one controlled by common law precedent and that the law should be changed by judicial decree, we have no authority to overrule the decisions of the Missouri Supreme Court on this point. *State v. Burr*, 542 S.W.2d 527, 533 (Mo.App.1976).[2]

The trial court's findings and conclusions on this point were that the motions did not allege facts, which, if true, would entitle movant to an evidentiary hearing. The trial court also found that no fundamental unfairness arose from the state's failure to introduce the evidence in question, especially since there was no factual allegation in the motions that the evidence in question would have affected the result of the trial.

The findings and conclusions of the trial court on this point were not clearly erroneous.

In summary, the trial court found that none of the allegations made by movant on his original and amended motion on the three points preserved for this appeal stated any ground for relief, and found that none of such allegations required an evidentiary hearing.

█ We have carefully reviewed the transcript consisting of 600 pages, the legal file, and two lengthy supplements to the legal file, including the original and amended motion to vacate and the trial court's two separate findings of fact, conclusions of law and judgments. We feel obligated to point out the difficulty in reviewing the points raised here as the result of the trial court entering judgment on the original motion, and then entertaining a successive motion on the same subject matter, following which it entered new findings of fact, conclusions of law, and judgment. The principal grounds presented on the second application had been raised and determined adversely to movant on the first application. Any new allegations made on the successive application could have been raised the first time around. The trial court should not have entertained the amended motion, Rule 27.26(d), but such entertainment was not prejudicial to movant, as it gave him another bite of the same apple, which he was not entitled to by law.

The findings of fact, conclusions of law, and judgments of the trial court denying his original and amended 27.26 motions without evidentiary hearing were not clearly erroneous. The evidence of defendant's guilt of the crimes of rape and two robberies was overwhelming. We find no errors of law on the part of the trial court either at trial or in disposing of the two motions.

The orders of the trial court dismissing movant's original and amended motions to

2. Our supreme court has ruled many times that corroboration of testimony of the prosecutrix in a rape case is not required, unless her testimony is contradictory, and in conflict with

physical facts, surrounding circumstances, and ordinary experience. § 566.030, Notes of Decision 412–420.

vacate judgment and sentence, and denying an evidentiary hearing, are affirmed.

All concur.