**STATE of Missouri,**
**Plaintiff-Respondent,**

v.

**James Myrle BOCKES,**
**Defendant-Appellant.**

**No. WD–35179.**

Missouri Court of Appeals,
Western District.

Aug. 14, 1984.

John Ashcroft, Atty. Gen., Bruce Farmer, Asst. Atty. Gen., Jefferson City, for defendant-appellant.

J. Patrick Wheeler, H. Scott Summers, Canton, for plaintiff-respondent.

Before LOWENSTEIN, P.J., MANFORD and BERREY, JJ.

BERREY, Judge.

Appellant James Bockes was convicted by a jury in the Circuit Court of Adair County, Missouri, of first degree robbery, § 569.020,[1] and armed criminal action, § 571.015. A persistent offender, he was sentenced to concurrent terms of twenty and five years imprisonment, respectively. He appeals from these convictions alleging six assignments of error, of which only one has been preserved for review. The convictions are affirmed.

Appellant does not challenge the sufficiency of the evidence supporting his convictions. The evidence adduced at trial shows the following. On December 31, 1982, at approximately 3:30 p.m., Richard Bailey was sitting at the lunch counter of the Grand Leader Pharmacy in Canton, Missouri. From his seat at the lunch counter, Bailey looked through the pharmacy's front window and saw a white automobile being parked in front of the pharmacy. Bailey's view was limited to the front of the car, which bounced up and down as if someone was exiting. Bailey then saw appellant walk around the front of the car. Appellant's face was not covered and Bailey viewed it for several seconds. On the sidewalk, appellant joined a woman who apparently had also exited the car. Appellant and his female companion entered the pharmacy, and then pulled the stocking caps, which were on their heads, down into masks covering their faces. Appellant brandished a revolver and commanded, "Go to the back of the store. This is a holdup." Bailey, Roy Houser (another customer at the counter), and a store employee complied with appellant's order.

Appellant's female companion, armed with a knife, approached Judy Snyder (another clerk at the pharmacy) and demanded drugs. After collecting several bottles of pills and placing them in a plastic bag, she ordered Snyder to remove the money from the cash register.

Throughout the course of the robbery appellant yelled at his companion to hurry because he was nervous and might start shooting.

As appellant and his companion were leaving the pharmacy he yelled, "Anybody sticks their heads—anybody comes to the front door before we're two blocks down the street, I'll blow your fucking heads off."

After the robbers closed the pharmacy door, Bailey ran towards the front window where he saw the front of the white automobile bounce as if people were entering it. The car then pulled away from the curb. Bailey and John Stoltz left the pharmacy and attempted to get the license plate number of the car. However, the license was

---

1. All sectional references are Revised Statutes of Missouri 1978 unless indicated otherwise.

not visible because the plate had been bent thereby making it illegible.

Bailey then crossed the street, entered his own car, and pursued the robbers. Bailey spotted the white automobile just south of the city limits. As he followed, Bailey observed bottles and pills being thrown out of the passenger's side of the car.

Deducing that the robbers were traveling towards LaGrange, Missouri, Bailey overtook the car and as he did so was able to observe the face of the driver; he saw that it was that of the same man who had robbed the pharmacy. Bailey arrived in LaGrange ahead of appellant, notified police officer Kenneth Ballard about the robbery, and pointed out appellant's car as it drove through LaGrange. Officer Ballard then entered his car and followed appellant.

Shortly thereafter, two Missouri State Highway Patrol cars joined the pursuit. Appellant pulled his car over onto the shoulder of the road. State Trooper Gordon pulled his car behind appellant's and as he began exiting, appellant's car sped off turning south onto a gravel road. Both state troopers gave pursuit and observed appellant's vehicle two miles down the road at a dead end. Both appellant and his companion were then arrested without incident. The troopers found a ski mask on the car's floor and a pair of coveralls on the road near the car. Additionally, a revolver was found by the side of the road near a drainage ditch. These items were subsequently identified as those used during the robbery.

On January 5, 1983, State Trooper Terry Moore conducted a line-up at the Lewis County Courthouse in Montecello, Missouri. Appellant and six other men participated. The sole witness during the line-up was Richard Bailey who identified appellant as the male robber of the Grand Leader Pharmacy.

Immediately prior to trial, appellant moved to suppress the pre-trial identification on the ground that the line-up procedure was impermissibly suggestive because the other line-up participants were of dissimilar age, respective to appellant, had dissimilar hair length, and did not have prosthetic legs. Appellant also raised the unremarkable point, which was summarily dismissed by the trial court, that other potential witnesses besides Richard Bailey did not view the line-up. Appellant's motion was overruled, trial subsequently had, and judgment of conviction entered pursuant to the jury verdict.

I

Appellant contends the trial court violated his constitutional and state statutory rights not to testify by refusing, *sua sponte*, to declare a mistrial following the prosecutor's closing arguments. In the rebuttal portion of his closing argument the prosecutor made the following comments:

Let's talk about the physical facts because people like to know what physical facts are and that way they don't have to rely on people's general perception. What are the physical facts? We had on the floor of the car, that car that the defendant was arrested in, was this [ski mask]. It's got stripes on it. I think that it is easily recognizable and Mr. Bailey recognized it. Mr. Bailey also told you that he was an artist. I think artists generally tend to have perception of colors. There was no explanation as to why this was on the floor of the car.

Defense counsel did not object to the prosecutor's comments—perhaps because an objection would bring attention to appellant's silence more than the comments themselves. In any event, appellant now asks that this point be considered as "plain error" under Rule 30.20 since it was not preserved in appellant's motion for a new trial. *State v. Mays*, 598 S.W.2d 613, 616 (Mo.App.1980).

The Fifth Amendment to the United States Constitution; Article 1, Section 19 of the Missouri Constitution; Section 546.270, RSMo.1978 and Rule 27.05 grant criminal defendants the right not to testify in their own trials and forbid comments by others regarding the exercise of this right. *See*

*State v. Chunn,* 657 S.W.2d 292, 294 (Mo. App.1983). This right is not absolute; it is tempered by the reality that:

> The trial court has wide discretion controlling the scope of closing argument. *State v. Shaw,* 636 S.W.2d 667, 675 (Mo. banc 1982). It is in a better position to observe the contested incidents and to determine the prejudicial effect upon a jury. *State v. Raspberry,* 452 S.W.2d 169, 173 (Mo.1970). Because of the trial court's superior vantage point, this court has held that it would disturb the trial court's decision, when the prosecutor has allegedly alluded to a defendant's failure to testify, only where the references are *direct* and *certain. State v. Hutchinson,* 458 S.W.2d 553, 555 (Mo.1970) (emphasis in the original).

*State v. Robinson,* 641 S.W.2d 423, 426 (Mo. banc 1982). Furthermore, a defendant may not provoke a reply to his own argument and then assert error. *State v. Therman,* 597 S.W.2d 254, 256 (Mo.App. 1980). In retaliation against a defendant's argument, a prosecutor, in rebuttal, may exceed the bounds otherwise limiting the content of his closing argument. *State v. Morris,* 662 S.W.2d 884, 890 (Mo.App.1983).

In *State v. Robinson, supra* at 426, the prosecutor's closing argument included the following contested statements:

> After the state's evidence which told you that he was there, that Glen Robinson was there and committed murder, *the defense had the opportunity to put on any evidence that they wanted to and all that they did was introduce two photos.* The evidence is overwhelming and uncontradicted. They have the opportunity and are allowed to put on any evidence they want. State's evidence— we went forward ... the evidence is uncontradicted. And the evidence points to one thing, that Glen Robinson is the man that murdered Thomas Laman (emphasis added).

In his rebuttal, the prosecutor attempted to explain his chief witness's difficulty in identifying the perpetrator's voice, "And she said she's never heard the voice since that time. Well, that could have easily been solved, not by me—." *Id.*

Finding that no error had occurred, the Missouri Supreme Court held that the trial court could have determined that the state's comments were responsive to appellant's arguments and that they did not directly and certainly refer to appellant's failure to testify. *Id.*

In *State v. Woods,* 639 S.W.2d 818, 820 (Mo.1982), the Supreme Court opined:

> The references now characterized as comments on appellant's failure to testify are *general statements that the defense had not contradicted Simmons' testimony and had not presented any evidence of appellant's innocence.* It would call for a strained conclusion to find an indirect reference to appellant's failure to testify.

In the instant case, appellant's closing argument focused on the state's failure to carry its burden of proof. The alleged improper comments were made during the rebuttal portion of the prosecutor's closing argument. Appellant presented no evidence whatsoever in his defense. The prosecutor did not make a direct and certain reference to appellant's failure to testify.

Appellant relies upon *State v. Chunn, supra,* in support of his argument that error occurred. That case is easily distinguished by the prosecutor's comment which clearly constituted a direct and certain reference to the defendant's failure to testify: "How can you ... the *defendant, explain* a tire tool in the car." *State v. Chunn, supra* at 294.

■ This court cannot say that the trial court erred in not declaring a mistrial, *sua sponte,* because of the prosecutor's comments.[2] This point is denied.

---

2. The Supreme Court of Missouri has suggested recently that certain comments by a prosecutor during rebuttal argument may constitute a reference, though indirect, to a defendant's failure to testify that are so damaging that they amount to reversible error. *State v. Williams,* 673

## II

Appellant's second point is that his in-court identification by Richard Bailey was tainted by an impermissibly suggestive pre-trial identification. Specifically, appellant argues the six other line-up participants were physically dissimilar to appellant because of age, hair length, and the fact that appellant has a prosthetic leg.

State Trooper Terry Moore, who conducted the line-up at the Lewis County Courthouse in Montecello, Missouri, on January 5, 1983, testified that all seven line-up participants, including appellant, were similar in physical appearance. Trooper Moore stated that the ages of the participants ranged from eighteen to thirty-three, their hair styles ranged from moderate hair length to over the ears, the line-up participants were standing in a stationary position when Bailey was brought into the room, and that appellant's prosthetic leg was not noticeable.

Bailey testified that the age of the line-up participants appeared to be between twenty and twenty-eight. He also testified that most of the line-up participants had long hair and moustaches, and though he was aware that appellant had a prosthetic leg, he did not see any of the line-up participants walk before making his identification and, therefore, he had no way of knowing which participant had a prosthetic leg.

■ The physical dissimilarities among the line-up participants are not significant enough to brand the identification procedure impermissibly suggestive. *See State v. Higgins,* 592 S.W.2d 151, 159 (Mo. banc 1979), *cert. denied,* 446 U.S. 902, 100 S.Ct. 1825, 64 L.Ed.2d 254 (1980). A reasonable effort to find physically similar participants for a line-up is normally all that is required. *State v. Hastings,* 628 S.W.2d 678, 680 (Mo.App.1982).

After viewing state's exhibits # 14 through # 22, which are photographs of the line-up participants, this court believes that a reasonable effort has been made to assemble physically similar line-up participants.

■ Moreover, a line-up does not require exact physical conformity of the participants. *State v. Kirk,* 636 S.W.2d 952, 954 (Mo.1982). Dissimilarity in physical appearance alone is insufficient to establish impermissible suggestiveness. *State v. Pennington,* 618 S.W.2d 614, 620 (Mo. 1981); *State v. Haymon,* 639 S.W.2d 843, 845 (Mo.App.1982); *State v. Hayes,* 624 S.W.2d 488, 489 (Mo.App.1981). Indeed, because reliability is the "linchpin" of an identification's admissibility into evidence, "if the defendant has some type of inherent physical abnormality or distinctive appearance, no line-up or photographic array would provide subjects reasonably close in appearance. In such a case, ... a likelihood of misidentification would be non-existent, regardless of the circumstances of the confrontation." *State v. Haymon, supra* at 845.

■ Bailey testified that prior to the robbery he viewed appellant's face for several seconds. Bailey also testified that as his vehicle passed appellant's, he again saw appellant's face for a span of a few seconds. This evidence vitiates appellant's argument that the pre-trial identification was based upon an impermissibly suggestive procedure.

■ Appellant also raises the point that the failure of other potential witnesses to view the line-up somehow prejudiced him. This assertion has no bearing whatsoever

S.W.2d 32 (1984). In *Williams* (reversed on other grounds), the Court, in *dicta,* upbraided prosecutors for referring indirectly to defendants who decline to testify:

> It is appropriate to express concern about prosecutors' attempts at subtle comment about the defendant's failure to take the stand. Perhaps some of our holdings have been too tolerant of subtle references. A

holding that a comment during argument does not require reversal of a particular conviction is not a license for the prosecutor's use of similar arguments in future cases. *Williams* does not affect the decision in the instant case and is mentioned only as a harbinger of stricter scrutiny to be afforded prosecutorial comments during closing arguments.

on the issue of whether the line-up procedure was so impermissibly suggestive that evidence thereof should not have been introduced at trial. Appellant's contention is without merit.

## III

Appellant's third point is the trial court erred in not instructing the jury on the lesser included offenses of first degree robbery: robbery in the second degree and stealing. This point was not preserved for review; appellant now requests this court to consider it under the plain error rule. Rule 30.20.

■ The trial court is required to instruct the jury on all lesser included offenses supported by the evidence, *State v. Smith*, 592 S.W.2d 165 (Mo. banc 1979); but whether an instruction should be given on a lesser included offense depends upon whether there are facts in evidence sufficient to arguably show a lack of an essential element of the higher offense. *State v. Hampton*, 648 S.W.2d 162, 164 (Mo.App. 1983).

The evidence adduced at trial demonstrates that appellant was armed with a revolver and threatened both employees and customers of the Grand Leader Pharmacy. When appellant ordered those in the front of the pharmacy to move toward the back they all complied. Throughout the course of the robbery appellant, within the presence of the employees and customers, beseeched his female accomplice to hasten her collection of drugs and money before he commenced shooting. As appellant departed, he threatened emphatically to shoot anyone who ventured outside of the pharmacy before appellant and his accomplice made good their escape.

■ Where, as in this case, there is strong and substantial evidence of every essential element of first degree robbery, an instruction on the lesser included offense is unnecessary. *See State v. Martin*, 624 S.W.2d 879, 883 (Mo.App.1981). The trial court did not err.

## IV

Appellant's fourth point is the trial court erred in submitting to the jury the verdict directing instructions because they are inconsistent with each other. Again, appellant has not preserved this point for appellate review nor has he cited any authority supporting his contention.

■ The record in this case does not indicate the trial court misdirected or failed to instruct the jury in the law, as to cause manifest injustice or miscarriage of justice. Appellant's point is without merit.

## V

Appellant's fifth point is the trial court erred in sentencing him to extended terms of imprisonment as a "persistent offender" because this unduly enhanced his underlying sentences for first degree robbery and armed criminal action. Essentially, appellant's argument is couched in terms of a violation of his constitutional right against double jeopardy. This point has not been preserved for review.

■ Appellant's criminal record prior to this prosecution consists of three felony convictions. Under § 558.016, RSMo Supp. 1983, "persistent or dangerous offenders" may receive enhanced assessments of punishment on underlying convictions. Appellant's enhanced sentences for both first degree robbery and armed criminal action are in accordance with the aforementioned statute and do not constitute double jeopardy. *State v. Thompson*, 610 S.W.2d 629, 634 (Mo.1981). This point is without merit.

## VI

Appellant's final point is that he was denied a fair trial "under the totality of the circumstances." Not only has this point not been preserved, but it is frivolous being utterly without merit.

Affirmed.

All concur.